CLARA V. RANK, APPELLEE, v. MARY GARVEY ET AL., APPELLANTS.*

FILED DECEMBER 17, 1902. No. 11,948.

Commissioner's opinion, Department No. 1.

1. Real Estate: VENDOR: WRITTEN · CONTRACT: PAROL MODIFICATION: STATUTE OF FRAUDS. A vendor authorized an agent in writing to sell real estate, naming in such writing the price at which the estate should be sold. Subsequently the vendor by parol authorized a modification of the price at which the agent might sell. *Held,* That as the original contract would have satisfied the requirements of section 3, chapter 32, Compiled Statutes,† even though it had not named the price at which the agent might sell, a subsequent parol modification of that portion of the contract did not bring it within the statute of frauds.

* Rehearing allowed. See opinion, p. 784, *post.*
† Cobbey's Annotated Statutes. sec. 5952.

2. **Attorney in Fact: Power of Attorney: Contract for Purchase of Land: Terms and Conditions: Knowledge of Principal.** Where one authorizes an attorney in fact, by power·duly signed and acknowledged, to make a certain contract for the purchase of land with certain parties, and of a certain date, and subsequently ratifies the action of his attorney, it is immaterial whether he knew all the terms and conditions of the contract at the time it was made, and he will be bound by the contract made by such attorney.

3. **Contract: Want of Mutuality: Defense.** Want of mutuality in a contract is no defense to an action for specific performance, where the party not bound thereby has performed all the conditions of the contract on his part, and has brought himself clearly within its terms.

4. **Agent: Contract Sale: Real Estate: Purchaser.** An agent authorized by contract to sell real estate to any purchaser thereafter to be secured is not guilty of fraud for failing to disclose the identity of a prospective purchaser, where it appears that the vendors neither asked nor made any attempt to ascertain who such purchaser was.

5. **Finding.** A finding by the trial court, sustained by sufficient competent evidence, will not be disturbed on appeal.

6. **Interpretation of Contract: Specific Performance: Plea in Bar.** Where the interpretation placed upon a contract for the sale of land by the parties thereto is such as makes the contract consistent throughout, one party thereto will not ordinarily be permitted, in an action for specific performance, to plead in bar of such action that the contract contains inconsistent provisions.

7. **Undivided Interest: Exclusive Occupancy.** While an undivided interest in real estate, accompanied by exclusive occupancy of the premises by the owner of such interest and his family as a homestead, is sufficient, in this state, to support a homestead exemption, the owner of an undivided interest, who claims and holds possession under a lease from the administrator of his deceased ancestor, paying a stipulated rent for the right to occupy, and neither having nor claiming any rights other than those of a tenant at will, and having no intention permanently to occupy and hold the premises as a homestead, will have no homestead right therein, and an unacknowledged written contract of sale, signed by himself and wife upon a sufficient consideration, will be enforced.

8. **Action for Specific Performance.** In an action for specific performance of a contract for the sale of land, the vendors will not be heard to urge an objection to performance which has been fully obviated and eliminated before the action was commenced.

APPEAL from the district court for Douglas county. Action to enforce the specific performance of a contract for the sale of real estate. Heard below before FAWCETT, J. Decree for plaintiff. Defendants appeal. *Affirmed.*

*Timothy J. Mahoney* and *James A. C. Kennedy,* for appellants.

*John P. Breen, contra.*

KIRKPATRICK, C.

This is a suit for specific performance of a contract for the sale of land, brought by appellee Clara V. Rank against appellants Mary J. Garvey et al. The petition sets up the contract of sale entered into by Mary Garvey, her husband; Thomas J. Ryan, his wife; Catherine Garvey, her husband; Annie Halpenny, her husband; and William and Mildred Tighe and Thomas Tighe, their guardian; the persons named being heirs at law of Thomas Ryan, deceased, and together owning a five-sixths interest in certain real estate situated in Douglas county, described in the petition, of which Thomas Ryan died seized. Attached to the petition as an exhibit is the contract, which it is claimed all the parties executed, and which was in fact executed by all the parties except Mary Garvey, whose name was signed to the contract by her husband in her absence. The name of Clara V. Rank was signed to the contract by her attorney in fact, John P. Breen. The petition pleads tender of full performance on the part of appellee, with prayer for specific performance of the contract. Separate answers were filed by Mary Garvey and James Ware. Catherine Garvey, Thomas J. Ryan, Theresa M. Ryan and Annie Halpenny united in an answer. The answers, aside from that filed by Mary Garvey, are of great length, and not even their material allegations can be set out in detail. The answer of Mary Garvey admitted that she is an heir of Thomas Ryan, deceased; that Patrick Garvey is her hus-

55

band; that she is the owner of an undivided one-sixth interest in the land described in the petition; and denies generally all the other allegations of the petition. The answer of Catherine Garvey, Thomas J. Ryan, Theresa M. Ryan and Annie Halpenny, briefly stated, is as follows: They admit their relationship to the deceased, and their ownership of an undivided interest in the premises, as alleged in the petition; they admit the signing of the contract set out; allege that it was tentative only; that they withdrew from such agreement before it was ever accepted or acted upon by appellee, and notified their agent not to deliver it, and that it never was in fact delivered; that it was not to become a binding contract until signed by appellee; that her attorney in fact exceeded his authority in signing her name to the contract, and that it never became a completed or binding contract; that the contract was vague and contained inconsistent provisions, rendering it unenforceable in equity; that Thomas J. Ryan and wife were entitled to homestead in the premises, and that they never acknowledged the contract before an officer authorized to take acknowledgments. They admitted the execution of deeds to the premises to James Ware, but denied that such deeds were fraudulently made. They alleged that Selby, their agent, was without their knowledge or consent also acting as the agent of appellee; that such fact was known to appellee, and was through her procurement, and that such conduct amounted to a fraud upon appellants, rendering the alleged contract void; that Clara V. Rank had no interest in the subject-matter of the controversy, and that the suit was not brought by the real party in interest. The separate answer of James Ware does not essentially differ from the joint answer just referred to.

To these various answers replies were filed by appellee, which, in addition to a general denial, pleaded that James Ware entered into the contract of purchase, not in his own interest, but in the interest of the South Omaha Stock Yards Company, and with full knowledge that the Ryan heirs had entered into a contract to convey the premises to

appellee; and that such conveyance was taken by Ware for the purpose of defrauding appellee. The reply further admitted that Clara V. Rank, appellee, was acting as trustee for Albert H. Veeder, who was the beneficial owner of the contract sought to be enforced.

The facts in the case as disclosed by the record, briefly stated, are as follows: On May 23, 1898, Mary Garvey, Catherine Garvey, Annie Halpenny, Thomas J. Ryan and Maud Ryan, were the sole living children of Thomas Ryan, deceased, and William and Mildred Tighe were the minor children of a deceased daughter of Ryan. Each of the children named, and the two grandchildren, who were minors, jointly owned undivided interests in certain lands and lots in South Omaha. On that day, the parties desiring to sell the land, all of them except Maud Ryan, whose whereabouts were unknown, entered into a contract of agency with Walter L. Selby, a real estate agent of Omaha. They authorized him either to sell or find a purchaser for the premises upon the terms mentioned in the contract. The contract provided that the property might be sold at a price less than the sum mentioned, provided the owners agreed, and also reserved a right on the part of the heirs to revoke the agency in writing at any time within ninety days from its date. Selby immediately began looking up a purchaser, and corresponded with one Albert H. Veeder, of Chicago, who subsequently came to Omaha to examine the property, but refused to take it at the price named, indicating, however, a willingness to take it at a lower price. Selby got the heirs together soon afterwards, and they agreed to sell at a price which was acceptable to Veeder. During the progress of these negotiations Veeder informed Selby that he did not desire to be known in the transaction as a purchaser, and inquired whether title could not be taken in the name of some other person. Selby suggested the name of appellee, his cousin, residing in Ohio, as a suitable person in whose name title could be taken. After some inquiry Veeder accepted the arrangement, with the agreement that appellee should execute a

power of attorney to John P. Breen, of Omaha, constitut-
ing him her attorney in fact to execute the contract and
perform all necessary acts.   Selby thereupon informed
the heirs that he had secured a purchaser, and prepared the
contract, which is attached to the petition as an exhibit,
and delivered it to one of the heirs to be executed.   The
contract was retained by the Ryan heirs for a time, but
was finally properly signed by all the heirs except Mary
Garvey, who was absent from Omaha on a visit, and her
name was signed to the contract by her husband.   The
contract was returned to Selby, who delivered it to John
P. Breen, attorney in fact for appellee, who, after examina-
tion, executed it and retained it, delivering a copy to the
agent, Selby.   In the meantime Veeder had forwarded to
Selby the money for the first payment, and also $200 to be
used in the matter of obtaining partition and sale of the
premises in order to get title from the minors.   Selby, on
receipt of the remittance from Veeder, deposited the money
to his own account in the bank, and mailed to each of the
heirs a check for $100, being the amount agreed upon as a
first payment.   The heirs seem to have refused the checks,
except Thomas Tighe, guardian; and in the meantime,
and within a day or two after Selby delivered the signed
contract to Breen for examination and for his signature as
attorney in fact for appellee, other parties, acting in the
interest of the South Omaha Stock Yards Company,
offered to the heirs a considerable sum more than they
were being paid for the premises by Veeder, and all of the
heirs, with the exception of Maud Ryan and the minors,
accepted the offer made on behalf of the stock yards com-
pany; and after taking from parties representing them a
contract and bond to indemnify from any damages on ac-
count of the contract they had made with appellee, they
deeded the premises to Ware, who it appears is an em-
ployee of, and took title for, the stock yards company.   It
is further disclosed that appellant James Ware, when he
took the conveyance of the premises from the four adult
heirs, besides executing the bond to hold the heirs harmless

as against their breach of contract with appellee, took an assignment from them of the purchase money due from Clara V. Rank under the contract which she is seeking to enforce in this suit. Within a day or so from the time Selby delivered the contract to Breen, Thomas J. Ryan, acting for the heirs, called upon Selby and informed him ·that they had decided not to go on with the contract, and tried to get him to surrender the contract which he had already delivered to Breen. This he refused to do.

Many objections to the correctness of the judgment·of the trial court are urged by appellants, which for convenience will be summarized as follows: (1.) That no complete contract of sale was ever entered into by appellants, and that this is especially true as to Mary Garvey. (2.) That the contract was never executed by appellee; that her attorney in fact exceeded his authority in signing her name to the contract; that the contract, not having been executed by appellee, is unilateral and unenforceable as against appellants. (3.) That Selby, the .agent for appellants, was also acting as the agent for appellee, without the knowledge or consent of appellants, and that he failed to inform appellants that the real purchaser was Albert H. Veeder, who was one of the directors and general attorney for Swift & Co.; that such conduct amounted to a fraud upon appellants, of which appellee had full knowledge, and that the contract made could, for that reason, not be enforced. (4.) That the contract contained inconsistent provisions, and that specific enforcement could not be decreed of such a contract. (5.) That Thomas J. Ryan and his wife were entitled to a homestead in the tract; that neither had acknowledged the execution of the contract before an officer authorized to take acknowledgments, and that the contract was for that reason non-enforceable as to them. (6.) That the contract is non-enforceable because it provided that appellee should acquire title from the adult heirs, and bring a partition suit so as to get title to the share of the minor heirs; that $200 of the purchase price was to be retained for that purpose; that appellee

was to bid a certain amount for the premises at the partition sale, from which bid the amount of existing incumbrances was to be deducted; that such contract was contrary to law, and would not be enforced.

Regarding the relation of James Ware to the controversy, the trial court found as follows: That "the defendant, James Ware, fully aware of said agreement with plaintiff, offered the said makers thereof a higher price for said property and induced them to break their said agreement with plaintiff, and convey said property to him and that on or about the 23d day of July, 1898, induced thereunto by such higher offer, they did convey, by deeds of general warranty, the said property to the defendant Ware, and that said Ware took such conveyances, not only with knowledge of plaintiff's prior agreement, but he took them with the full knowledge of the pendency of this case and subject to the outcome of it; and this court therefore finds and concludes that the said Ware ought, according to all the rules and practices of courts of equity to keep and specifically perform plaintiff's said contract." This finding of the trial court seems to be abundantly sustained by the evidence. It is, therefore, quite apparent that James Ware stands in no better position to resist the enforcement of the contract than do the other appellants.

It is contended by counsel for appellants that no contract for the sale of the premises mentioned in the petition was ever in fact consummated, and for that reason no contract can be specifically enforced. From a careful examination of the evidence in the case we are of the opinion that no valid reason has been presented for the non-enforcement of the contract as to any of the appellants, unless it be as to Mary Garvey. While many objections are urged as to the validity of the contract in suit as to the other appellants, they have all been resolved by the trial court in favor of appellee, and we are unable to see any reasons for setting aside the judgment as to such appellants.

As to whether or not specific enforcement should be decreed as against Mary Garvey and her grantee, Ware, as to

her undivided one-sixth interest, serious question is presented. As we have seen, she did not personally sign the contract of sale, which was delivered to appellee on the 8th day of July. It is contended by counsel for appellants that she not only did not sign or authorize the signing of the written contract, but that she never made an oral contract for the sale of the premises. There seems to be at least one ground upon which the action of the trial court as to Mary Garvey can be sustained, and upon which the contention of appellants must be overruled.

Upon the 23d day of May, 1898, all of the heirs, including Mary Garvey, executed a written contract of agency with W. L. Selby, by the terms of which they authorized him to sell their five-sixths interest in the premises upon the terms mentioned in such contract, the material portion of the contract being as follows:

"We, the undersigned, and owning an undivided five-sixths interest in the estate of Thomas Ryan, deceased, hereby grant to W. L. Selby, in consideration of services to be performed by him, the sole agency to sell three parcels of the land hereinafter described, and if a sale is made, or a purchaser thereof found at the price and upon the terms hereinafter specified, or at any other price or terms which we may hereafter authorize or agree to, we agree to pay said Selby a cash commission of five per cent."

There can be no doubt that, under the terms of this contract, Selby was authorized to do either one of two things: First, to execute a valid contract of sale for the premises upon the terms mentioned; and second, to find a purchaser who was ready and willing to purchase the property upon the terms mentioned in the agreement. Acting under this contract, Selby produced a person willing to purchase the property, but not at the price named. Acting under the quoted portion of the contract, Selby invited the heirs to his office to determine whether they would accept a lower price for the property. In accordance with his request, they met at his office on the 5th day of July, and, Mary Garvey acting as spokesman, they agreed to accept

a lower price. There can be no doubt that such oral modification of the contract did not bring it within the statute of frauds. Under section 3, chapter 32, Compiled Statutes,* the authority of the agent is required to be in writing; but it is not required that the price at which the agent is authorized to sell shall be contained in the writing. Therefore, the instrument granting the agent authority to sell, as originally given, would have been sufficient to meet the statute, even though it had not named the price at which the agent could sell. It follows, therefore, that the parties were at liberty to modify by parol such portion of the contract as the statute does not require should be in writing. Parties to a contract required to be in writing can not extend the scope of the statute by embracing in their contract more than the statute requires. Proceeding under the contract as quoted, and as modified by parol, Selby, by correspondence, brought about the consummation of a valid contract of sale of the premises with A. H. Veeder. The trial court so found, and the evidence fully sustains the finding. This contract, made by the admitted agent of the heirs, is as much the contract of Mary Garvey as though she had made it in person rather than by her agent.

Considerable space in briefs of counsel for both parties to this case has been taken up in discussing the question whether or not Mary Garvey, by signing an affidavit for a continuance in the case, did admit the execution of the contract claim to such an extent as to take the oral contract, which it is claimed was made, out of the statute of frauds. Inasmuch as we have reached a conclusion upon this branch of the case upon other grounds, it is not deemed necessary to consider this question.

It is next contended on the part of appellants that the contract was never executed by appellee, that her attorney in fact exceeded his authority in signing her name to the contract, and that the contract, not having been executed by appellee, is unilateral and unenforceable as

* Cobbey's Annotated Statutes, sec. 5952.

against appellants. We are unable to find merit in this contention. The power of attorney executed by Clara V. Rank and her husband to John P. Breen, her attorney in fact, for the purchase of the land, authorized him to sign her name to a contract with the owners of the property of date July 9, 1898. It further authorized him, as her attorney in fact, to institute in the district court a partition suit for the partition of the property, and to bid in the name of appellee at a partition sale of such property, if such sale be ordered by the court. There can be no doubt that appellee, having authorized her attorney in fact to execute the contract of a certain date, describing it, will be bound by the action of such attorney.

It is contended by appellants that the power of attorney does not particularly identify the contract. This contention is wholly without merit. The power of attorney described the property being purchased, as well as giving the date of the contract to be executed. It also provided for the partition suit; and it follows, by necessary implication, that she knew she was getting an undivided interest in the property. Not only is this true, but even before the execution of the contract by her attorney in fact, the purchase price for the lands had been paid to the acknowledged agent of the Ryan heirs. Moreover, she subsequently ratified everything her attorney in fact had done in the premises, not only as to the execution of the contract in suit, but as to the bringing of this suit for specific performance. She had a perfect right to so ratify, even though she did not know all the terms and conditions of the contract. Mechem, Agency, sec. 128. There can be no doubt that the contract is valid and binding upon appellee.

But, conceding the contention of counsel for appellants that J. P. Breen exceeded his authority in the execution of the contract of sale, appellants would be in no better position. The rule is in this state well settled that "want of mutuality is no defense, even in an action for specific performance, where the party not bound thereby has performed all of the conditions of the contract and brought

himself clearly within its terms." *Bigler v. Baker,* 40
Nebr., 325, 326; *Smith v. Gibson,* 25 Nebr., 511.

In the case at bar, appellee not only accepted the offer
made by appellants, but paid to their agent the first por-
tion of the purchase price in full, and executed and ten-
dered to appellants notes secured by a mortgage on the
premises for the remainder of the purchase price in ac-
cordance with the contract.   It follows that, whether the
attorney in fact exceeded his authority or not, appellants
are bound to convey.

It is next contended that Selby, the agent for appellants,
was also acting as agent for appellee without the knowl-
edge or consent of appellants, and that he failed to inform
appellants that the real purchaser was Albert H. Veeder, a
member of the board of directors and general counsel for
Swift & Company; that appellee had knowledge of and
procured such action on Selby's part, and that such con-
duct amounted to a fraud, which would render void the
contract entered into.   The trial court, in passing upon
this phase of the case, said: "The charge that Mr. Selby
has been guilty of deceit, I  do not think has been estab-
lished by the evidence.   That Mr. Selby did not disclose to
his principals the parties with whom he was negotiating,
and the methods of his negotiations, of course, is clearly
established, but the defendants themselves, some of them,
admit on the stand that they never asked Mr. Selby whom
he was dealing with, and that they did not care whom he
was dealing with.   All they cared for was to sell the prop-
erty and get the money.   If there was any evidence in the
record that the defendants had gone to Mr. Selby as their
agent, and asked him whom he was dealing with, and the
particulars as to his mode of dealing with the parties, and
he had given them an untrue answer, I would look at the
case differently.   But, as I say, there is nothing in the
record to indicate that.   Mr. Selby proceeded by somewhat
devious modes in getting at the final consummation of this
deal.   Why he did so I can not understand.   But when we
consider them in the light of the fact that the defendants

themselves cared nothing about this, and allowed the ne-
gotiations to go on without making any inquiry whatever, I
do not think that they can come in now and claim that they
have been deceived, nor do I think the allegation in their
answers is true, that if they had known that he was
dealing with a representative of Swift & Company, they
would not have gone on with the sale. The evidence dis-
closes that they discussed that matter among themselves.
Some one suggested that a new packing-house was coming;
that it was a packing-house that wanted it. Those that re-
member the conversation say that they did not care
whether it was a packing-house or what it was."

From a careful examination of the evidence, it is ap-
parent that the finding of the trial court upon this branch
of the case is abundantly sustained by the evidence. The
record wholly fails to disclose any evidence tending to
show bad faith on the part of the agent. The rule is ele-
mentary in this state that where a finding by the trial
court is sustained by sufficient competent evidence, this
court will not reverse such finding; and this is true al-
though this court from it might have reached another
conclusion.

Again, it is contended that the contract sued upon con-
tains inconsistent provisions, and that specific perform-
ance should not be decreed of such a contract. This con-
tention is based upon the fact that the written agreement
as finally executed by all the parties except Mary Garvey
contains a provision, in the portion fixing the amount
appellee was to pay, that appellee should assume and pay
the taxes for the year 1898, and again, at the close of the
contract, a provision was inserted in the following lan-
guage: "But it is understood that from each of said
amounts of $1,740 is to be deducted one-sixth of the cost
of the abstract and one-sixth of all incumbrances on said
property, and interest thereon due July 15, 1898, as afore-
said." There is little doubt that the correct construction
of this contract is that Clara V. Rank was to pay the 1898
taxes specifically mentioned, and that the clause last above

quoted should be held to mean other incumbrances; and when so construed, it is not inconsistent with the special provision regarding 1898 taxes. The contract is capable of this construction without doing violence to any of its terms. That being true, such construction will be adopted, especially in view of the fact that the undisputed testimony shows that all parties understood that the purchaser was to pay the 1898 taxes, and that all other incumbrances were to be paid by the grantors. It is very clear that no misunderstanding existed between Selby, the agent for the Ryan heirs, and A. H. Veeder, who was the purchaser in fact. This contention, therefore, can not avail appellants.

It is next contended by appellants that Thomas J. Ryan and wife are entitled to a homestead in the premises, and that they never have acknowledged the contract before an officer authorized to take acknowledgments and that it is, therefore, unenforceable as against them. In the joint answer of Catherine Garvey, Thomas J. Ryan and Theresa M. Ryan, is a paragraph in the following language: "These defendants further show to the court that the defendants Thomas J. Ryan and Theresa M. Ryan are husband and wife, and that said Thomas J. Ryan is the head of a family, duly entitled to homestead exemptions under the laws of the state of Nebraska; and that at the time of signing the aforesaid paper the said Thomas J. Ryan and Theresa M. Ryan were then and there residing on a portion of said premises as their homestead; and said paper was never acknowledged by either the said Thomas J. Ryan or Theresa M. Ryan, and for that reason said proposed and tentative agreement never became operative against the defendants, or any of them." An allegation in substantially the same language is found in the answer of Ware. Neither Thomas J. Ryan nor his wife, Theresa, was called as a witness, and no attempt was made at any time to point out or designate any portion of the tract in controversy as the homestead of Thomas J. Ryan. It is disclosed by the record that some time after the death

of Thomas Ryan, the administrator leased the eighty-acre
tract upon which the house was situated to one Burk, who,
it seems, remained in possession under his lease for some-
thing like two years, and up to about March, 1898.   In
the meantime the administrator had obtained from the
district court for Douglas county an order for the sale of
the premises for the payment of the debts of the estate.
In March, 1898, the administrator, not having yet made
a sale, executed a lease of the premises to Thomas J. Ryan,
permitting him to occupy the house on the premises until
such time as a sale could be made, or until the adminis-
trator desired possession.   In consideration of his occu-
pancy of the premises, Thomas J. Ryan was to pay $15
per month as rent, which was to be deducted from his dis-
tributive share of his father's estate.   As stated, Thomas
J. Ryan seems to have been permitted to occupy the prem-
ises for the reason that the administrator did not desire
to have anyone in possession under a lease for fear it might
interfere with the sale of the property.   In the case of
*Giles v. Miller*,[*] 36 Nebr., 346, it is said: "An undivided
interest in real estate, accompanied by the exclusive occu-
pancy of the premises by the owner of such interest and
his family as a home, is sufficient to support a home-
stead exemption."   It is contended by counsel for appel-
lants that under the authority of this case, Thomas J.
Ryan was entitled to homestead exemption in the tract of
land in controversy.   With the rule quoted from the *Giles
Case* we are content, but it has no bearing upon the ques-
tion here presented.   In this case Thomas J. Ryan was in
possession, not by virtue of his ownership of an undivided
interest, but under a lease from the administrator, and
was simply the latter's tenant at will, and had no right
aside from that which any other tenant would have had.
The rule seems to be settled that the occupancy, to entitle
the occupant to homestead, must be coupled with an inten-
tion to remain thereon and to occupy and claim the land
as a homestead; while in the case at bar, as disclosed by

[*] 38 Am. St. Rep., 730.

the evidence, the only reason Thomas J. Ryan was permitted to go upon the premises was so that he might promptly surrender possession at any time, either when the premises were sold, or the administrator desired possession for any other purpose. The evidence does not tend to show that Thomas J. Ryan had any intention permanently to reside on and claim the land as his homestead. Waples, Homestead and Exemption, p. 189; *Windle v. Brandt,* 55 Ia., 221. His occupancy was wholly inconsistent with any claim of homestead. We are of opinion that he can not now be heard to claim the property as exempt in order to defeat a specific enforcement of a contract which he has made for a sale of the premises.

Again, as we have seen, the premises were sold to Ware almost immediately after the execution of the contract with appellee, and the suggestion of homestead is now being made by Ware. It is a matter of grave doubt how far a court of equity should go in making selection of homestead when the question is first presented by a subsequent purchaser, such as appellant Ware in this case seems to be.

In *Stevenson v. Jackson,* 40 Mich., 702, 703, it is said: "The difficulty in this case grows out of the peculiar complications. The land contract embraced more than forty acres, and there had never been any selection of a homestead from the land described. The law can make none for the parties, for there is no rule which can be a guide in setting off any particular portion or in giving it any particular shape." Again, in the same case it is said: "Under these circumstances it is a little difficult to understand how a homestead right can be preserved for the benefit of Garvin [the purchaser]. Jackson [the vendor] has no homestead right now, and any selection he might make would be made not for occupation as a homestead, but for the advantage of Garvin, and might be quite different from a selection made for the convenience of occupation."

Again, it may be said that if Ryan was entitled to home-

stead exemptions in the tract, it would be limited to a tract not exceeding two lots. It is true that the eighty-acre tract has not been platted, but the undisputed evidence shows that it is within the corporate limits of the city of South Omaha, and it is probably true that the tract which could be claimed to be exempt would be limited to an area equal to two lots as platted in that portion of South Omaha adjacent to the tract. *Norfolk State Bank v. Schwenk*, 51 Nebr., 146; *Wilson v. Proctor*, 28 Minn., 14; *Heidel v. Benedict*,* 61 Minn., 170. At no time during the progress of the trial was any attempt made by Ryan or any one for him, to point out or designate any portion of the tract which he claimed as a homestead. In fact, he made no claim to homestead right other than as set out in his answer hereinbefore quoted.

The final contention of appellants is that the contract sued upon is void because it contains provisions requiring appellee, Clara V. Rank, after she obtains title to the undivided four-sixths interest of the heirs who resided in and about Omaha, to bring a partition suit in order that title might be acquired to the one-sixth interest belonging to the minor children of Thomas Tighe and his deceased wife, and the further provision that $200 of the purchase price was retained for attorney's fees and expenses of such partition suit; and that in the event the court should order the property sold as a means of partition, appellee would at such sale bid a certain stipulated sum. It appears that after the execution of the contract in suit, and before the trial of this cause in the district court, the whereabouts of Maud Kane, née Maud Ryan, were ascertained, and by negotiations between herself and appellee, Clara V. Rank, conducted independently of the other heirs, Maud duly conveyed her one-sixth interest to appellee and received payment therefor. Of the minor heirs of Thomas Tighe, Mildred reached her majority and conveyed her one-twelfth interest to appellee, and William Tighe, the other minor, through his father, and by order

* 31 L. R. A., 422; 52 Am. St. Rep., 592.

of the district court, conveyed his one-twelfth interest to appellee. No partition suit being necessary, appellee, in her petition, tendered to the heirs the $200 retained for expenses of such suit, and by the terms of the decree the money goes to the parties entitled thereto. So that at the time of the trial all that portion of the contract to which the objection now being considered applies had been fully executed, and we are of opinion that appellants can not be heard to urge this as a reason why they should not comply with the contract.

From a careful examination of the pleadings and the evidence in the case, we are of opinion that the judgment of the trial court is right and should in all respects be affirmed.

HASTINGS and DAY, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed May 5, 1904. *Judgment of affirmance adhered to.*

*Hoctor-Johnson Co. v. Billings,* 65 Nebr., 214, distinguished, and our former judgment, *ante,* p. 767, is adhered to.

BARNES, J.

This cause was reargued on a motion for a rehearing, and was assigned to a member of the commission, who failed to dispose of it before his term of office expired. The members of the court thereupon took the case under consideration, and after a careful examination of the record and the briefs, we ·are constrained to hold that our opinion herein, reported *ante,* page 767, is correct.

It is strenuously contended that the holding in this case is in conflict with the rule announceed in *Hoctor-Johnson Co. v. Billings,* 65 Nebr., 214. But counsel are mistaken in this contention. In that case the plain-

tiff did not seek to enforce the contract as it was made, but sought to have the court make and enforce a new contract. It appeared therein that the defendants had failed to secure an outstanding undivided interest, without fault on their part, and were unable to convey it according to the terms of the contract. The plaintiff, thereupon, asked the court to compel them to convey their undivided interest, and accept the purchase price less the amount or value of the interest they could not convey, and less a further sum claimed as damages for their failure to procure and convey the outstanding undivided interest; this the court refused to do. So it appears that there is no real conflict between these cases, and that both, considering the difference in the facts, are correctly decided.

We are satisfied that the opinion of Commissioner KIRKPATRICK fairly determines every question involved in this case; that any further discussion thereof is unnecessary, and our former decision is therefore adhered to.