JOHN EMANUEL V. EDWIN H. BARNARD ET AL.

FILED MAY 5, 1904. No. 12,757.

1. **Insolvent Corporation: ATTACHMENTS: LIABILITY OF DIRECTORS.** Where, by an attachment proceedings, without any fraud or irregularity, certain *bona fide* creditors of an insolvent corporation secure the application of all of the corporate assets to the payment of their claims, the fact that the directors of the corporation who had guaranteed the payment of such claims requested, and thus induced, the creditors to institute the attachment suits, without giving the said creditors any advantage or rights, other than those which as a matter of law they already possessed, does not make such directors liable in an action at law to the other creditors of the corporation.

2. **Action in Tort.** One is not liable in tort for procuring or inducing others to pursue a clear legal right, although such action may result to his advantage.

3. **Action at Law: PETITION: PRAYER.** In an action at law, a prayer for equitable relief is of no avail, unless the petition states facts which will authorize the court to grant such relief.

4. ——: CREDITORS' BILL. A single creditor can not maintain an action at law against a part of the stockholders of an insolvent corporation for a violation of the provisions of section 136, chapter 16 of the Compiled Statutes. Such action should be brought in equity, by the receiver if there be one, or by a creditor on his own behalf, and for all the other creditors similarly situated, against all of the stockholders of the corporation.

5. **Judgment: REVERSAL.** A plaintiff in error is not entitled to have a judgment of the district court reversed because the rights of a

part of the defendants are not adjudicated, when no right of recovery exists in his favor against any of them.

6. **Misjoinder:** REVIEW. In such a case, the question as to whether there was a misjoinder of causes of action, or of parties, does not affect the plaintiff, when he is the only party complaining.

ERROR to the district court for Dodge county: JAMES A. GRIMISON, JUDGE. *Affirmed.*

*George L. Loomis,* for plaintiff in error.

*Courtright & Sidner, E. F. Gray* and *Stinson & Martin, contra.*

BARNES, J.

This was an action at law brought by the plaintiff, an individual creditor of an insolvent corporation, in the district court for Dodge county, against the defendants who were respectively the president, secretary and general manager, as well as directors and a part of the stockholders of the corporation. The plaintiff was the owner of two judgments against the association, upon which executions had been issued and returned unsatisfied, and these judgments are the basis of the action which was brought against the defendants jointly. After the issues were joined and the cause had been pending for some considerable time, a stipulation was entered into by the parties, on which, together with the pleadings, the cause was submitted to the court. Thereupon the defendants, Barnard and Hinman, moved for a judgment in their favor on the pleadings and stipulation. The attorney for defendant Huette refused to join or participate in the motion. After the argument and submission of the case, the defendant Hinman was granted leave to, and did, withdraw the motion on his part. The court thereupon sustained the motion of defendant Barnard, and rendered a judgment in his favor dismissing the plaintiff's cause of action. A motion for a new trial was filed and overruled, and thereupon the plaintiff prosecuted error.

Two distinct theories are advanced in support of the plaintiff's right to recover. The first one is based on the following facts: It appears that, on the 28th day of July, 1896, the corporation was justly indebted to two creditors, Hall and Chase, on certain promissory notes, then past due, which it was unable to pay by reason of its insolvency. The defendants Barnard and Hinman had guaranteed the payment of these notes, and it is alleged that the defendant Huette had agreed to share their responsibility. It is alleged in the petition:

"The defendants fraudulently and wrongfully procured the said Hall and the said Chase to commence suits on said notes, so made to and held by them, in the district court for Dodge county, Nebraska, and to attach, in said suits, all the property and assets of every kind belonging to said corporation, and to have all of said property and assets sold under said attachment, and the proceeds thereof entirely applied toward the payment of said three several notes, themselves agreeing to and paying all the costs and expenses of said proceedings; and all of the property and assets of the said corporation were sold by the sheriff of said county, upon orders of sale issued in said attachment suits, on the first day of February, 1897, and on the 16th day of February, 1897, for the sum total of $6,259.50, and the proceeds of said sales were applied to the payment of said notes for $3,000 and $2,000 to said Hall, and the part payment of said note for $5,000 to said Chase."

It was admitted by the defendants that the debts due the attaching creditors existed and were guaranteed; that the attachment proceedings were had, the property sold and the proceeds applied as stated; but the allegation that the defendants procured the attachment proceedings to be commenced was denied; and the defendant Huette denied any liability for the debts. The contention of the plaintiff is that, because the defendants were officers of the corporation and were liable for the debts which were the foundation of the attachment proceedings, and because the entire property of the corporation was, by

sale under such proceedings, applied to the debts for which the defendants were so liable, by procuring the attachments to be sued out, they misappropriated the property of the corporation and rendered themselves liable to him in an action at law for the entire amount of his claim.

This action can not be maintained as one for the misappropriation of the funds of the corporation, because every dollar of such funds went to pay its just debts, and no stockholder or party directly interested in the corporation has cause to complain. The defendants did not convert any of the corporate property to their own use; there is no pretense that the attachments were not regularly issued, or that the debts upon which the property was applied were not genuine; nor is it contended that the attaching creditors were wrongdoers in any sense, or that they did anything they had not a legal right to do. It is true that they exercised their unquestioned legal right in a manner that relieved the defendants of a portion of their liability for the debts of the corporation; but the mere fact that the defendants requested, and thus induced, the creditors to take this course does not render them liable to the plaintiff, even in a suit in equity. There is no property or assets of the corporation in their hands which the plaintiff can reach, and they have received no payment upon any debts owed to them, as the result of their action as officers of the corporation. If the plaintiff has any cause of action against the defendants, it is an action at law sounding in tort. The facts alleged are not sufficient to give the plaintiff the right to maintain such an action, the petition does not charge the defendants with conspiracy with the attaching creditors; and such creditors are not parties to this suit. It has been well said that there can be no conspiracy to do that which is lawful, in a lawful manner. *Porter v. Mack & Boren,* 50 W. Va. 581, 40 S. E. 549. It is lawful for a diligent creditor to secure the payment of his debt from an insolvent corporation, and there is no pretense in this case

that such act was done in an unlawful way. Unless an act is wrongful in the sense of being unlawful, it will not sustain an action for damages. In the case at bar, the action of the defendants conferred no new right on the attaching creditors, and gave them no advantage over the other creditors which they did not already possess. No liability is created against one for procuring a third person to do an act which may lawfully be done. In 1 Cooley, Torts (3d ed.), sec. 93, it is said: "That which is right and lawful for one man to do can not furnish the foundation for an action in favor of another." We are of the opinion that one is not liable in an action for damages because he procures another to do that which is neither legally nor morally wrong. That the defendants paid the costs of the attachment proceedings is no cause for complaint on the part of the plaintiff. If it is true that they were guarantors of the debts due the creditors, which were the basis of the attachment proceedings, they were liable for the costs made in collecting these debts. Their guaranty upon the notes in question was an express agreement to pay all costs and expenses paid or incurred in collecting the same. None of the cases relied on by the plaintiff sustain his contention. A careful examination discloses that, in a part of them, the officers themselves had taken the assets to pay debts due them from the corporation, thus giving themselves a preference over the other creditors; and that, in the others, they had, by some action of their own, turned over the assets of the corporation for the payment of debts on which they themselves were liable. As before stated, the defendants in this case had taken no action by which any property of the insolvent corporation was misapplied. We fail to find a single case supporting the plaintiff's first theory; and we hold that the judgment of the district court was correct on this point.

The plaintiff's second contention is that the defendants were liable as stockholders for the failure of the corporation to give the notice required by section 136, chapter

16 of the Compiled Statutes (Annotated Statutes, 4128). The pleadings and stipulated facts show that the notice was published, but was insufficient in this, that it was not signed by a majority of the board of directors. And it is contended that the plaintiff can maintain this action for his sole benefit, and in this form against the defendants, without joining all of the stockholders of the insolvent corporation. On the other hand, the defendants contend that plaintiff must bring his suit in equity, for himself and all other creditors similarly situated, against all of the stockholders; and, having failed to do so, the district court was right in dismissing the action. It must be conceded that we are firmly committed to the doctrine that the double liability of stockholders in banking corporations, and other corporate bodies, and the liability of the stockholders in such corporations for unpaid subscriptions can only be enforced after the assets of the corporation are wholly exhausted, and, then, at the suit of a receiver for all of the creditors, or a single creditor, in behalf of himself and all others similarly situated, against all of the stockholders of such corporation. *Van Pelt v. Gardner*, 54 Neb. 701; *Pickering v. Hastings*, 56 Neb. 201; *Farmers Loan & Trust Co. v. Funk*, 49 Neb. 353; *State v. German Savings Bank*, 50 Neb. 734; *Hastings v. Barnd*, 55 Neb. 93; *Brown v. Brink*, 57 Neb. 606; *Fremont Package Mfg. Co. v. Storey*, 2 Neb. (Unof.) 325. In the case last above cited it was said:

"Under the rule established in this state, this action must be brought against all the delinquent stock subscribers, and if all are not made parties defendant, a good and sufficient reason should be set forth in the petition for not doing so to warrant a recovery against any. The rule established in this state is supported by strong authority in the decisions of other states; and, commenting upon this rule, the supreme court of Michigan, in *Dunston v. Hoptonic Co.*, 83 Mich. 384, 47 N. W. 322, say: 'This seems to be the rule as established by the great weight of authority, and I think it is the just, reasonable and

equitable one. Any other rule would permit the creditors of the corporation to select one or only a few of the stockholders within the jurisdiction, and compel payment by them of all the debts of the corporation, at least up to the unpaid balance of their subscription, and such subscribing stockholders, in order to compel the others to contribute, would be remitted again to the courts, thus leading to a multiplicity of suits.' " It is contended, however, that there is a distinction between such liability of the stockholders and the one sought to be enforced in this action. It is insisted that the liability here in question is penal in its nature, and therefore the action can be maintained. This contention, pursued to its ultimate conclusion, means that, where there has been a failure to comply with the terms of section 136, by publishing the notice in the exact manner and form as provided therein, any one of the stockholders of the corporation may be sued, and a recovery had for the full amount of the debt due by the corporation to any individual creditor, without regard to the rights of any other creditor, or the liability of any other stockholder. We can not accede to this proposition. The section in question reads as follows:

"Every corporation hereafter created shall give notice annually, in some newspaper printed in the county or counties in which the business is transacted, and in case there is no newspaper printed therein, then in the nearest paper in the state, of the amount of all the existing debts of the corporation, which notice shall be signed by the president and a majority of the directors; and if any corporation shall fail to do so, after the assets of the corporation are first exhausted, then all the stockholders of the corporation shall be jointly and severally liable for all the debts of the corporation then existing, and for all that shall be contracted before such notice is given, to the extent of the unpaid subscription of any stockholder to the capital stock of such corporation, and in addition thereto the amount of capital stock owned by such individuals."

It will be observed that, while the liability declared for such default seems to be *quasi* penal in its nature, yet, the amount of recovery depends upon the sum due from the stockholder on his contract as a subscriber to the capital stock of the corporation, with an additional liability, to the amount of the stock held by him. Again, section 139 provides:

"If any corporation fail to comply substantially with the provisions of this subdivision in relation to giving notice, and other requisites of organization, after the assets of the corporation are first exhausted, then the property of any stockholder shall be liable for the corporate debts to the extent of the unpaid subscription of any stockholder to the capital stock of such corporation, and in addition thereto, the amount of capital stock owned by such individual."

It thus appears that while, in a certain sense, that is to say, to the extent of creating an additional liability, the statute in question is penal (*Kleckner v. Turk*, 45 Neb. 176; *Globe Publishing Co. v. State Bank of Nebraska*, 41 Neb. 175), yet, the right to recover anything at all thereunder depends upon the contractual relation of stockholder. Again, it is provided that no liability attaches, at all, under this statute until all of the corporate assets are exhausted, and we are aware of no case in which an action like the one at bar has been maintained. Section 4, article 11*b* of the constitution, provides:

"In all cases of claims against corporations and joint stock associations, the exact amount justly due shall be first ascertained, and after the corporate property shall have been exhausted, the original subscribers thereof shall be individually liable to the extent of their unpaid subscription, and the liability for the unpaid subscription shall follow the stock." We have held, in an unbroken line of cases, that notwithstanding this section of the constitution makes each stockholder individually liable to the extent of his unpaid subscription, yet, in order to enforce such liability, the amount of the claims must be first

ascertained by the judgment of a court, and the corpo·
rate assets exhausted, by the issuance of an execution
upon such judgment and the return of the same unsatisfied.
In addition to this we have held that a suit in equity,
based on this situation of affairs, must be brought, either
by the receiver of the insolvent corporation or by a
creditor, for himself and all other creditors similarly
situated, against all of the stockholders of the corporation.
Section 136, in express terms, provides that the stock-
holders are not made liable for the debts of the cor-
poration by a failure to publish the required notice, until
all of the corporate assets are first exhausted. Again,
as before stated, the liability of each individual stock-
holder depends upon the amount of stock owned by him,
and the amount due and unpaid on his contract of stock
subscription. It follows that the reasons which impelled
us to adopt the rule in the one case are equally potent in
the other. If, as is claimed, this is a penal action, then
the question of the amount of the defendant's stock sub-
scription, and the amount of the stock owned by him,
would cut no figure whatever. Such an action, if purely
penal, could be maintained by any individual creditor of
the corporation against any individual stockholder, for
the full amount of the corporate debt due to him. That such
was not the intention of the legislature seems quite clear
to us. It is apparent that it was the purpose of that body
to simply create an additional fund for the payment of a
certain class of creditors, to be reached in the same man-
ner, and by the same procedure, as the amount for which
the stockholders were theretofore liable. In order to en-
force this liability, it is necessary for the receiver of the
insolvent corporation, if there be one, or a creditor, for
himself and on behalf of all other creditors similarly
situated, to bring an action in equity against all of the
stockholders. The decree in such an action should find
the amount due each creditor entitled to participate in
the fund, together with the amount for which each in-
dividual stockholder is liable. Such a decree would be

just and equitable, and would, at once, put an end to all further litigation.

We therefore hold that the plaintiffs' petition, so far as this question is concerned, did not state facts sufficient to constitute a cause of action. It is contended, however, that, while this was an action at law, yet, the petition contained a prayer for general equitable relief, and therefore the court erred in dismissing the action. In answer to this contention, it is sufficient to say that a prayer for equitable relief is of no avail, unless the petition contains an averment of facts upon which such relief may properly be granted.

It is next contended that the case was never submitted for judgment by the defendants Hinman and Huette. We think this question is immaterial. It was submitted for judgment by the defendant Barnard, and the facts which would entitle the plaintiff to recover against Barnard would also entitle him to recover against Hinman and Huette. If, however, as we have held, no recovery could be had against Barnard, then no judgment could be rendered against either of the other defendants.

Lastly, we may say that the question as to whether there was a misjoiner of causes or of parties in this case is of no importance to the plaintiff. He is the only party here complaining, and judgment was properly rendered against him.

For the foregoing reasons the judgment of the district court was right and is therefore

AFFIRMED.