LANSING CO. *v.* ROGERS.

1. VENDOR AND PURCHASER—LAND CONTRACTS—OPTIONS.

Equity will specifically enforce a land contract to convey a parcel of land for a price and terms stated in detail, subject to an option to purchase within 60 days to a third person, who did not, however, exercise his right within the time limited in the option. The contract to purchase the property was not so indeterminate or incomplete that it amounted to a mere offer, and it was not affected or terminated by the vendors granting an extension of time to the holder of the option, which right was also suffered to lapse.

2. SAME—SPECIFIC PERFORMANCE—MISTAKE—CONTRACTS.

Nor was the contract invalid because it did not include a stipulation agreed upon between the parties that the vendee should assume a mortgage covering a farm of which the land constituted a portion, and should release the balance of the real property from the lien; equity could correct the mistake.

3. SAME—TENDER—MISTAKE.

If the omitted term or provision is favorable to the defendant, the omission from such writing is not a defense, provided the vendee is willing to perform the omitted provision.

Appeal from Eaton; Smith, J. Submitted November 19, 1914. (Docket No. 132.) Decided December 18, 1914.

Bill by the Lansing Company against Eria A. Rogers and Pearl Rogers for specific performance of a contract. From a decree for complainant, defendants appeal. Affirmed.

*Elmer N. Peters,* for appellants.

*C. F. & E. T. Hammond* (*Russell R. McPeek,* of counsel), for appellee.

STEERE, J.   In this suit defendants have appealed from a decree imposing specific performance of a land contract given by them to complainant, covering 80 acres of land in township 3 north, of range 5 west, Eaton county, Mich.

The instrument in controversy was executed in duplicate on July 22, 1913.   It was drawn by a reputable attorney, to whose office the parties went after making their agreement, for the purpose of having it put in writing.   No question is raised as to the good faith of all parties at that time, nor as to the contract having been drafted as directed, while all were present and after its terms, as prepared, were fully talked over and agreed upon.   It was there and then signed by defendants and the authorized agent of complainant.   By its terms, briefly stated, defendants agreed to sell and convey to complainant the land therein described for the sum of $6,400—$1 on the signing of the contract and the balance, less a mortgage on said premises of $5,300, which the grantee was to assume, not later than August 12, 1913—defendants to at that time furnish an abstract of title brought down to date and execute and deliver to complainant a full covenant, warranty deed in proper form conveying the absolute fee of said premises, free from all incumbrances, except said mortgage.   Said contract follows the form and phraseology commonly resorted to in the preparation of such instruments and embodies the recognized essentials of a land contract, with no unusual provisions or special features, except the following clause, upon which the defense is chiefly based:

"It is specially understood and agreed that this agreement is subject to the terms of a certain contract in writing between Eria A. Rogers and Pearl Rogers, of the one part, and C. G. Stead, of Jackson, Michigan, of the other part, dated July 5, 1913, wherein said C. G. Stead is given an option to purchase said

above-described premises, running thirty days from the date thereof, said option by its terms to be operative for sixty days, unless canceled by said Eria A. Rogers and Pearl Rogers subsequent to August 7, 1913, and such cancellation to be effective two days subsequent to date of such registered notice."

It appears, undisputed, that defendants not only failed to cancel the Stead option subsequent to August 7, 1913, as they legally could have done, but they extended it until August 30th. Defendant Eria Rogers explained to complainant's agent, who protested against it, that this was done "out of fairness to Mr. Stead," who, he anticipated, could not or would not do anything until the option expired. Defendant Pearl Rogers testified:

"We afterwards adjusted the matter with Mr. Stead, and got that option out of the way."

Whatever the adjustment might have been, Stead never exercised his option. All his right under it expired, and no claim is made that he has or asserts any interest in the property. Any interest or claim which he may have once had was entirely eliminated before this suit was begun.

Previous interviews, proposals, and requests for defendants to convey said property according to the terms of the contract, accompanied by offers of complainant to fulfill on its part, having resulted in refusal, just before this suit was begun complainant's counsel, on or about September 9th, visited defendants and tendered a deed for their execution, together with an amount of money sufficient to pay the balance above said mortgage, which complainant was to assume. Defendants again declined to carry out the terms of the contract and refused the tender; their reason for so doing, as outlined in counsel's brief, being that the instrument was incomplete and but an offer on the part of complainant to purchase the prop-

erty not later than August 12th upon condition that defendants would cancel the Stead option and tender complainant a deed, that defendants were free to accept or reject the offer, and that their act in extending the Stead option, of which complainant had notice, was in legal effect a rejection of the offer.

Their claim that the contract was incomplete is based upon the fact that, at the time of signing it, defendants were the owners of a farm of 240 acres, of which the 80 in question formed a part, and the mortgage of $5,300, which complainant was to assume, covered the entire farm. This mortgage was given January 11, 1912, for the term of 10 years, interest payable semi-annually; the mortgagors, however, having the privilege of paying $100 or more on the principal at any date when interest payments fell due. As to this feature of the case, the testimony shows complainant was ready and willing to pay this mortgage in full at the first opportunity, and intended to do so the following January, when semi-annual interest fell due, had so assured defendants, and offered upon the hearing to pay into court sufficient money to liquidate said mortgage, to be so applied under and by direction of the court. The decree appealed from covers this. Specific performance is decreed only upon condition that full payment be made according to the terms of the contract, including any interest which defendants may have paid since tender and demand of a deed, and payment into court of the amount necessary to pay said mortgage in full, both principal and interest, when the next semi-annual installment of interest would fall due upon the same, at which time it could be paid in full according to its terms.

This contract is beyond question complete as to the subject-matter, the parties, and the price, and even as to the manner and terms of payment, except the claim that, through oversight, inadvertence, or mis-

take arising from omission to clearly express the intent of the parties, the balance of defendants' farm is not relieved of the mortgage and might be burdened with it for years, against which it is manifest they should have been protected by express language. Even if the contract was in that particular objectionable for uncertainty, the court by its decree has eliminated that objection, acting well within its authority.

A court of equity may in many cases grant relief justified by conditions shown at the time of adjudication, and is not bound to relate its decrees to the time of instituting proceedings, as must be done when rendering judgment in a court of law. 3 Elliott on Contracts, § 2359. The provision to relieve the balance of the farm from the mortgage, which it is claimed was omitted either intentionally or by mistake, was one favorable to defendants. Complainant has more than once offered, in court and out, to perform the contract with that provision included, and the court has safeguarded that offer.

"If the omitted term or provision of the contract is one that is favorable to defendant, its omission from the writing is not a defense, if complainant is willing and ready to perform the whole agreement, including the omitted term. This is true whether the omission was intentional or by mistake." 36 Cyc. p. 608.

See, also, 2 Story's Equity Jurisprudence, § 770a; *Park* v. *Johnson*, 4 Allen (Mass.), 259; *Anderson* v. *Kennedy*, 51 Mich. 467 (16 N. W. 816).

It is contended in behalf of the defense that this was a contract to be performed at the option of defendants, the adverse party, because it was subject to the Stead option, which they chose not to cancel after August 7th and before August 12th, the date for performance of their contract with complainant; that no provision of the contract in express terms obligated them to cancel the Stead option, and they

are therefore relieved of any duty to convey to complainant.

We are unable to place such construction upon the instrument of July 22d. At that time Stead held an option upon the 80 acres, giving him an absolute right to purchase it on or before August 7th. Subject to that right, defendants owned the land and were free to sell it, and after that time, if Stead did not call his option, they could, by taking proper steps, convey to the purchaser, whoever it might be, a good title. This contract of July 22d, if it shows anything, shows that defendants wished to sell and complainant wished to buy the property at the price agreed upon. It states in express terms that "the said parties of the first part hereby agree to sell and convey, and the said second party hereby agrees to purchase," said property. The price, terms of payment, abstract, etc., are distinctly stated, and date of performance is set at a time when it was within the power of defendants to give a good title, if Stead has not exercised his option, and defendants agreed at that time "by a full covenant, warranty deed in proper form to convey to said second party, or its assigns, the absolute fee of the above premises, free of all incumbrances, except as above stated," referring to the mortgage of $5,300. Stead's option was in effect an incumbrance. Under this agreement it was their duty to place themselves in position to perform when it was in their power to do so. They had that absolute right after August 7th and before the time set for performance. Up to August 7th, while they did not have that right, they were protected by the terms of the contract, which for that purpose was made subject to the Stead option. The date set for consummation of this contract (August 12th) is convincing evidence of the intent of both parties and their agreement to perform as soon as it was within the power of defendants to do so.

This is not of that class of cases cited by defendants where there are interested third parties against whom specific performance cannot be enforced. All rights of Stead were ended before this bill was filed. An objection which has been fully eliminated before suit is commenced cannot be urged against specific performance. *Rank v. Garvey*, 66 Neb. 767 (92 N. W. 1025, 99 N. W. 666).

The decree is affirmed, with costs.

McALVAY, C. J., and BROOKE, KUHN, STONE, OSTRANDER, BIRD, and MOORE, JJ., concurred.