WALTER A. HOLSTE AND ANOTHER v. CHRISTINA CHARD BAKER AND ANOTHER.[1]

March 14, 1947.

No. 34,280.

[1]Reported in 26 N. W. (2d) 473.

322

*Young & Gislason,* for appellants.
*M. J. Daly,* for respondents.

MAGNEY, JUSTICE.

Plaintiffs brought action for specific performance of an oral contract for the sale of land and appeal from a judgment entered pursuant to adverse findings.

Plaintiffs, Walter A. and Pearl C. Holste, husband and wife, are the son-in-law and daughter of defendant Christina Chard Baker. Carl Baker is the husband of Christina and is joined as defendant for that reason only.

Christina is the owner of a 280-acre farm in Scott county. Plaintiffs claim that on or about April 15, 1944, she sold and agreed to convey to plaintiffs the farm in question. They claim that the agreed consideration was $14,000 and that the plaintiff Pearl agreed to relinquish her future interest in her mother's estate as one of the latter's prospective heirs. In other words, as part of the purchase price, Christina agreed to credit plaintiffs with Pearl's prospective interest in her estate, which was to be in the nature of an advancement. This interest was estimated at $3,000. The evidence supports plaintiffs' contention that an oral agreement on these terms was entered into; in fact, it is substantially admitted by Christina. There is nothing in writing. Defendants invoke the statute of frauds as a defense.

Plaintiffs made application to the Farmers and Mechanics Savings Bank of Minneapolis for a mortgage loan of $14,000 on the farm with which to pay the purchase price. The bank appraised the farm at $28,000 and agreed to make the loan. The trial court found the value of the farm to be $21,000. Shortly after the making of the contract, Christina disposed of the personal property on the farm by auction. Plaintiffs took possession. The 160 acres on which the buildings were located were leased by plaintiffs to Melvin Chard, son of Christina, for $800 until March 1, 1945. He moved in about May 1, 1944. Plaintiffs also took possession of the remaining 120 acres. Defendants remained in the house until about July 1, 1944. A dispute arose between plaintiffs and defendants over the removal by

defendants of two short pieces of copper cable, one of which conveyed power to the electric stove and the other to the brooder house. On July 29, 1944, Christina served written notice on plaintiffs that she did not intend to convey the farm to plaintiffs. This litigation followed. Plaintiffs claim, first, that because they took possession of the farm and paid a portion of the purchase price they may specifically enforce the oral contract; secondly, they claim that with the assent of Christina they made valuable improvements on the land and that for this reason also they may specifically enforce the oral contract.

The oral contract for the sale of the land was subject to Minn. St. 1945, §§ 513.01, 513.04,[2] unless taken out of the statute by part performance.

■ In the instant case the contract was entered into. Because of that fact, Christina does not lose the benefit of the statute where she asserts and insists upon the statute. One may admit the making of an oral contract without losing the benefit of the statute of frauds where it is asserted and insisted upon. 49 Am. Jur., Statute of Frauds, §§ 605, 619.

■ Restatement, Contracts, § 197, states the rule here applicable as follows:

"Where, acting under an oral contract for the transfer of an interest in land, the purchaser with the assent of the vendor

(a) makes valuable improvements on the land, or

(b) takes possession thereof or retains a possession thereof existing at the time of the bargain, and also pays a portion or all of the purchase price, the purchaser or vendor may specifically enforce the contract."

In applying these rules to the facts in the instant case, we will take them up in reverse order. We will first consider whether subd. (b) as applied to the practically undisputed facts as to possession and payment entitles plaintiffs to specific performance of their oral contract. In Shaughnessy v. Eidsmo, 222 Minn. 141, 23 N. W. (2d) 362,

2See, M. S. A. §§ 513.01, 513.04, and cf. Mason St. 1927, §§ 8456, 8459.

we definitely committed ourselves to the rule as found in subd. (b) of § 197 of Restatement, Contracts, and expressly overruled prior decisions insofar as they required proof of irreparable injury or great hardship in addition to part performance.

Plaintiffs admit that no cash payment was made to defendants, but they contend that a portion of the purchase price was paid by the agreement of Christina to credit plaintiffs as an advancement to Pearl, with Pearl's future interest in her mother's estate as one of her prospective heirs. And the question here is whether such promise can be treated as part payment.

1 Am. Jur., Advancements, § 3, defines an advancement as follows:

"In its strict technical sense an advancement is a perfect and irrevocable gift, not required by law, made by a parent, during his lifetime, to his child, with the intention on the part of the donor that such gift shall represent a part or the whole of the portion of the donor's estate that the donee would be entitled to on the death of the donor intestate."

And in 26 C. J. S., Descent and Distribution, § 91, it is said:

"* * * in its legal sense, an advancement is an irrevocable gift in praesenti of money or property, real or personal, to a child by a parent to enable the donee to anticipate his inheritance to the extent of the gift; * * *."

An advancement must be an irrevocable gift. Kuhne v. Gau, 138 Minn. 34, 163 N. W. 982; Leach v. Leach, 162 Minn. 159, 202 N. W. 448; In re Estate of Beier, 205 Minn. 43, 284 N. W. 833. In the Kuhne case, this court said (138 Minn. 36, 163 N. W. 982):

"It is settled in this state that, where such a gift is fully executed, a promise by the donee to repay it, is without consideration."

It is obvious in the instant case that no gift was executed. The most that plaintiffs can claim is that they received a promise by Christina that she would make an advancement to apply on the purchase price of the farm. By forcing Christina to convey at the consideration agreed upon, she was being compelled to make an advance-

ment, in other words, compelled to make a gift. No irrevocable gift had been made at the time she changed her mind about selling the farm. If Christina had made an advancement, an irrevocable gift, to her daughter Pearl, of say $3,000 in cash, and Pearl had returned it to her mother to apply on the purchase price of the farm, we would have an entirely different situation. The legal result here is that plaintiffs, although they went into possession of the farm, have not paid any part of the purchase price and are not entitled to have the contract specifically enforced on the ground of possession and part payment. This is not a case like Shaughnessy v. Eidsmo, 222 Minn. 141, 23 N. W. (2d) 362, where we had both possession and part payment.

Although we have concluded that an oral agreement substantially as contended for by plaintiffs was entered into and possession given the plaintiffs, the fact that no payment, either in part or full, was made prevents us from awarding specific performance of the contract on the basis of possession and payment. It is true, possession was given plaintiffs, and, with the assent of defendants, they made improvements on the land. They claim now that such improvements were valuable, that they constituted part performance, and that on that basis they are entitled to specific performance of their oral contract.

The term "part performance" is a misnomer. In Restatement, Contracts, § 197, *comment b,* it is stated:

" 'Part performance' of a contract is not a strictly accurate designation of such acts as taking possession and making improvements, for the purchaser makes no promise to perform such acts. The use of the term, however, is inveterate and is therefore adopted."

Plaintiffs leased the 160 acres with the buildings to Melvin Chard and were thus in possession of that part of the farm through a tenant with defendants' consent. They also took possession of the remaining 120 acres and did certain work thereon. No buildings were erected. According to plaintiffs, 70 or 80 acres of the 120 acres are tillable. They claim that all the land was plowed; that on 17

acres of it 255 pounds of red clover seed were sowed; that millet was seeded on 8 acres; that part of the seeding was done to enrich the soil for the following year by plowing under the growth; that they spent from 8 to 10 days, 5 to 6 hours a day, ditching; that they had purchased drain tile, but it had not been put in; that they repaired the fences by tightening up wires and putting in 20 to 25 new posts and a day and a half was consumed in doing this work; that some brush was cut down near the fence and burned; and that a large amount of farm machinery was purchased to be used on the farm. Defendants, on the other hand, claim that the acreage of clover seeded by plaintiffs did not exceed 5 or 6; that no new fence posts were put in by plaintiffs; and that whatever fence repairs were made were made by Carl Baker. The trial court found that no permanent or valuable improvements as contemplated by the statute were made by plaintiffs on the 120 acres. In this we agree, even assuming that plaintiffs did all the work they claim they did.

The farm consisted of 280 acres with substantial farm buildings. It was valued at $28,000 by the loan inspector for the Farmers and Mechanics Savings Bank of Minneapolis, which bank was willing to loan plaintiffs $14,000 with defendants' farm as sole security. The court fixed the value at $21,000. The actual value of the work done by plaintiffs on the farm in question was very small compared to the value of the farm itself. In our opinion, the value of the work done compared to the value of the property involved in the action for specific performance should properly be one of the items to be considered in determining whether the improvements made were valuable improvements. It is apparent that the value of the work done by plaintiffs on the farm in question was very small compared with the value of the farm itself. As is said in 49 Am. Jur., Statute of Frauds, § 456:

"* * * In determining the sufficiency of improvements made by a purchaser, they must be viewed in the light of the value of the land, the purchaser's means and station in life, and the circumstances surrounding the case."

In Shaughnessy v. Eidsmo, 222 Minn. 141, 23 N. W. (2d) 362, this court, as stated, definitely committed itself to the rule found in Restatement, Contracts, § 197, subd. (b). And the rule stated in subd. (a) of the same section appeals to us as a clear, simple statement of the legal proposition applicable to a situation such as we have here. In 6 Dunnell, Dig. § 8885, the Minnesota rule is stated:

"* * * Taking possession and making substantial improvements is sufficient, if it is done with the consent, express or implied, of the vendor, * * *."

In the same section the Minnesota cases are reviewed. Whether an improvement made by a purchaser with the assent of the vendor, acting under an oral contract for the transfer of an interest in land, is a valuable improvement so as to be sufficient as part performance depends on the facts in each particular case. We hold that the improvements made by plaintiffs were not such valuable improvements as to constitute part performance of their oral contract.

■ Under the facts here, plaintiffs are not without a remedy. The work done and expenditure made by them upon the land, in the nature of improvements adding to the value thereof, are capable of being estimated and ascertained with reasonable certainty or accuracy, and it has been held that part performance of a contract within the statute of frauds may make a cause of action, not for damages for breach of the contract, but in quasi contract. Pressnell v. Lundin, 44 Minn. 551, 47 N. W. 161; Todd v. Bettingen, 109 Minn. 493, 124 N. W. 443; Hewitt v. Parmenter, 181 Minn. 454, 232 N. W. 919; Hatlestad v. Mutual Trust L. Ins. Co. 197 Minn. 640, 268 N. W. 665; Pfuhl v. Sabrowsky, 211 Minn. 439, 1 N. W. (2d) 421.

In the instant case, to hold that plaintiffs are entitled to a conveyance from defendants would result in clear injustice. The only consideration Christina, the owner, would receive for a farm worth at least $21,000, as found by the trial court, would be $14,000. Her promise to credit plaintiff Pearl's interest in the property as a prospective heir as additional consideration is, of course, no consideration moving from plaintiffs to her. As plaintiffs may have a remedy

in quasi contract to recover their outlay or part of it, no serious injustice is being done them by the result reached here.

Judgment affirmed.

---

[1]Reported in 26 N. W. (2d) 478.