# JOSEPH JOHNSON AND ANOTHER v. JOHN QUAAL AND ANOTHER.

83 N. W. (2d) 796.

June 28, 1957—No. 37,043.

*H. W. Swenson, Swenson & Nelson, Julius Skaug,* and *Morrison & Skaug,* for appellants.

*Lauerman & Johnson,* for respondents.

DELL, CHIEF JUSTICE.

This is an action for an accounting and for the conveyance to the plaintiffs of the legal title to a farm located in Lac qui Parle County. Defendant John Quaal, hereinafter referred to as the defendant,[1] appeals from a judgment determining the amount due under a contract for sale and requiring him to convey his interest in the farm to the plaintiffs.

Prior to 1943 plaintiffs admittedly were the owners of the farm subject only to a mortgage to the Federal Land Bank. On February 11, 1943, the mortgage was substantially in default, and negotiations were conducted between the plaintiffs and the bank resulting in the plaintiffs' deeding the farm to the bank and the cancellation of the mortgage by the bank. In December 1944, pursuant to a policy of the bank of permitting borrowers who had lost their farms to repurchase them, or to designate someone else to purchase them, plaintiff Joseph Johnson certified in writing to the bank that he wanted the defendant, who had been a boyhood neighbor, to purchase the farm. This plaintiff further certified that he was making arrangements with the defendant to lease the farm so that he could stay in possession. The purchase of the farm was completed by the defendant in February 1945 and he received a deed naming himself and his wife as joint tenants. Thereafter the parties entered into several leases providing for a one-third share of the crop to the defendant and cash rent for hay and pasture. Plaintiffs remained in possession of the premises at all times. Between 1947 and 1953 substantial improvements were made on the farm by the plaintiffs. In 1953 a dispute arose between the parties resulting in the commencement of this action.

In their complaint plaintiffs alleged that at the time the defendant

---

[1]The action against the defendant Annie Quaal was dismissed.

purchased the farm from the bank there was an agreement between the parties that the $21,000 paid by the defendant to the bank was, in effect, a loan by the defendant to the plaintiffs and that the legal title to the farm was to be held by the defendant merely as security for this indebtedness. The trial court found that no such agreement had been made. However, the court did find that sometime after the defendants had acquired title to the farm the defendant entered into a verbal agreement with the plaintiffs to sell them the farm for $21,000 upon the following terms: That the plaintiffs would continue in possession; that out of the landlord's share of the income from the farm the defendant would pay the taxes and other expenses; that defendant would be paid 5-percent interest on the money he had invested; and that the remainder would be applied on the interest and principal of the purchase price.

■ The defendant first contends that the evidence does not support the finding that there was a verbal agreement for the sale of the farm. The best evidence of the existence of such an agreement was the defendant's own record book which was introduced in evidence by the plaintiffs. Notwithstanding certain alterations in the book, it was shown with the aid of a handwriting expert that from the time he acquired the farm in 1945 the defendant had applied the plaintiff's payments to the purchase price of the farm, after deducting taxes, expenses, and interest on his investment. There is also a statement in evidence given to the plaintiffs by the defendant in 1947 showing "rent" received, debits for expenses, and $1,000 interest, the difference being labeled "Balance for principle [sic]." Defendant, in fact, admitted in his testimony that he had made an agreement to sell the farm to the plaintiffs but claimed that the plaintiffs had failed to carry out the agreement. This latter assertion is contrary to the defendant's records and could well be disbelieved by the trial court. Suffice it to say that the record discloses sufficient support for the finding of the existence of a contract.

■ Defendant next contends that, even assuming there was an oral agreement to sell the farm, specific performance should not be granted because the agreement, as found by the trial court, is incomplete and uncertain in its terms. It is claimed that the contract is silent as to: (1) The amount of the landlord's share of the income from the farm; (2) what the "other expenses" should be; (3) when plaintiffs should be

chargeable with taxes; and (4) when the interest at 5 percent should start. A review of the evidence discloses that whatever uncertainty there may have originally been in the agreement was adequately resolved by the subsequent conduct of the parties. Even though the parties may have expressed an agreement in terms so vague and indefinite as to be incapable of interpretation with a reasonable degree of certainty, they could cure this defect by their subsequent conduct and by their own practical interpretation.[2] A court of equity does not look with favor on objections of uncertainty where the subsequent conduct of the parties in reliance on the contract makes the precise acts which remain to be done clearly ascertainable and also leaves the complaining party without an adequate remedy unless the contract is enforced.[3] Here the amount of the payments made by the plaintiffs to the defendant and the allocations made by the defendant to taxes, interest, and "other expenses" are clearly ascertainable from defendant's own records. They were accepted by the parties and are not in dispute. On the basis of these payments and allocations it is clear, as the trial court concluded, that more than one-half of the purchase price of the farm has been paid. The only remaining act required of the defendant is certain, namely, a conveyance by the defendant of his interest in the farm.[4] The plaintiffs are obviously left without an adequate remedy unless the contract is enforced.[5]

The defendant next challenges the finding of the trial court that the improvements made on the farm by the plaintiffs were made in reliance on the oral agreement. The plaintiffs' testimony is replete with the implication that the improvements were made in reliance on a con-

---

[2] 1 Corbin, Contracts, § 101; Wallace v. Joseph Dixon Crucible Co. 223 Minn. 162, 25 N. W. (2d) 465; Rubin v. Dairymen's League Co-op. Assn. 284 N. Y. 32, 29 N. E. (2d) 458; Walker v. Kelly, 91 Mich. 212, 51 N. W. 934; Rank v. Garvey, 66 Neb. 767, 92 N. W. 1025, 99 N. W. 666.

[3] Crawford v. Carter, 72 S. D. 514, 37 N. W. (2d) 241.

[4] The trial court's determination of the amount still due under the oral contract, and its determination that defendant Annie Quaal was not a party to the contract and should, therefore, retain her interest in the farm, are not in question on this appeal.

[5] See, Shaughnessy v. Eidsmo, 222 Minn. 141, 23 N. W. (2d) 362, 166 A. L. R. 435.

tract for sale. There is ample corroborative evidence. The improvements were of a very substantial nature, including installation of a hot-water heater, new bathroom fixtures, stool and lavatory, tiled bathroom wall and rubber tile on the floor, also rubber tile on the kitchen floor and pantry, sanding of all floors in the house, both upstairs and downstairs except the kitchen and pantry floors which were covered with tile, replastering the kitchen, repairing the basement foundation, scraping and refinishing all woodwork in the kitchen, pantry, and stairway, painting the house and barn, new ditching, putting a new roof on the house, installing a windmill pressure pump, constructing a cattle shed with concrete floor, corncrib, chicken coop, cesspool, new fencing, feedbins, and planting approximately 1,000 trees for shelter. There is evidence that at least some of these improvements were known and observed by the defendant and it would be quite proper to infer his consent. The trial court was well justified in concluding that these improvements and additions would not have been made by a mere tenant but rather were made in reliance on a contract for the sale of the farm. Such improvements serve a dual purpose in that they not only offer corroboration and support to plaintiffs' claim of the existence of a contract, but also constitute part performance so as to take the contract out of the statute of frauds.[6]

■ Finally, the defendant attacks the trial court's finding that the payments made by the plaintiffs to the defendant were made with unequivocal reference to the oral contract. Whether acts of part performance are unequivocally referable to a vendor-vendee relationship under an oral contract is a question of fact to be determined by the trier of fact.[7] The evidence does show that beginning shortly after defendant's acquisition of the farm from the bank, the plaintiffs and the defendant entered into leasing agreements and payments made by plaintiffs to the defendant were made in accordance with the terms of these leases. However, the evidence also shows that from the very beginning the payments made by plaintiffs under these leases were treated not as

---

[6]See, Burke v. Fine, 236 Minn. 52, 51 N. W. (2d) 818; Holste v. Baker, 223 Minn. 321, 328, 26 N. W. (2d) 473, 477.

[7]Shaughnessy v. Eidsmo, 222 Minn. 141, 23 N. W. (2d) 362, 166 A. L. R. 435.

rent, but as payments on the purchase price of the farm. While it is true that a lease is persuasive evidence of a landlord-tenant relationship, nevertheless, it is not conclusive.[8] Where, as here, the consistent conduct of the parties can reasonably be explained only by the existence of some relationship other than landlord and tenant, namely, vendor-vendee, a trial court is justified in finding that such conduct was unequivocally referable to a contract of sale.[9] As we said in Shaughnessy v. Eidsmo, 222 Minn. 141, 151, 23 N. W. (2d) 362, 368, "The entire record * * * is pregnant with indications of a dominant intent of the parties from the inception of their transaction" that the relationship between them was that of vendor and vendee.

One additional point made by the defendant relative to the statute of frauds as a bar to enforcement of the oral contract is that denial of specific performance will work no irreparable injury on the plaintiffs. We deem it unnecessary to consider this point for the reason that, as pointed out in the Shaughnessy case, no showing of irreparable injury is necessary where, as here, relief is sustainable under the unequivocal reference theory.

The defendant also assigns as error the fact that the oral contract was not alleged in the complaint. While the merits of this contention appear doubtful, we deem it unnecessary to fully consider the matter. The record fails to disclose that this point was ever presented to the trial court so as to allow it to exercise its discretion in permitting a possible amendment to the pleadings. Nor is this matter properly presented in this court, since it is merely asserted without proper argument or authority. Consequently, it is deemed waived.[10] The judgment of the trial court must be affirmed.

Affirmed.

---

[8]Drager v. Seegert, 138 Minn. 6, 163 N. W. 756.

[9]See, Burke v. Fine, 236 Minn. 52, 51 N. W. (2d) 818; Shaughnessy v. Eidsmo, 222 Minn. 141, 23 N. W. (2d) 362, 166 A. L. R. 435.

[10]See, State, by Burnquist, v. Bollenbach, 241 Minn. 103, 63 N. W. (2d) 278; Murray v. Wilson, 227 Minn. 365, 35 N. W. (2d) 521; 1 Dunnell, Dig. (3 ed.) § 384. Compare, Roberge v. Cambridge Co-op. Creamery Co. 243 Minn. 230, 67 N. W. (2d) 400, where a similar question was properly presented.