## SPYRIDON (SPEROS) TJANETOPOULOS v. ARLYS MARGARES, EXECUTRIX OF ESTATE OF GUST MARGARES, AND ANOTHER.

98 N. W. (2d) 97.

July 10, 1959—No. 37,636.

Raymond L. Flader and Murnane & Murnane, for appellants.
Leonard, Street & Deinard and Blacker & Blacker, for respondent.

THOMAS GALLAGHER, JUSTICE.

Appeal from an order of the District Court of Ramsey County denying a motion for a new trial after findings which determined that Spyridon Tjanetopoulos, also known as Speros Tjanetopoulos, is the owner of certain real property in St. Paul upon which is located a gasoline filling station; and that Arlys Margares, as widow of Gust Margares, has no right, title, and interest therein.

On appeal it is contended that (1) the evidence is insufficient to support the finding that an oral contract had been entered into by Gust Margares and Speros Tjanetopoulos, whereby the former agreed to convey or devise the property to the latter; (2) the evidence is insufficient to support the finding that certain acts undertaken and certain services performed by Speros were referable exclusively to such agreement; and (3) in any event Arlys Margares, as widow of Gust Margares, is entitled to her statutory share of such property, since she has never consented to any conveyance or other disposition thereof.

In 1950 Speros was employed by the Greek government in Athens, Greece, as a skilled automotive mechanic under civil service regulations which gave him certain tenure rights to his position. In March 1950 Gust Margares, who was an uncle of Speros and childless, visited Athens with his wife Arlys as guests of Speros and his family. While there Gust urged Speros to give up his government position in Athens and to move with his family to St. Paul. As an inducement he then told Speros that he would convey a filling station which he owned,

located at 1624 Rice Street, St. Paul, to Speros as soon as the latter had moved to St. Paul and had become sufficiently familiar with the English language to transact business with filling station customers; or otherwise that, if he had not acquired such familiarity with the English language at the time of Gust's death, he (Gust) would devise such property to him (Speros). The same promise was made by Gust on a number of subsequent occasions.

On or about May 15, 1950, in reliance upon this promise, Speros agreed to move with his family to St. Paul as soon as the necessary arrangements could be made. On June 2, 1955, pursuant thereto, he left Greece with his family and arrived in St. Paul shortly thereafter. He at once started working at the filling station, which at the time was operated by a lessee, and commenced learning the English language. On October 1, 1955, Gust transferred possession of the filling station to Speros and one Charles Youness but retained the title. By January 1, 1956, Speros had learned the English language well enough to transact business with customers at the station, but no conveyance of the property was made to him.

On January 22, 1956, Gust died testate. By the terms of his will dated May 1, 1953, all of his property was left to his wife Arlys who refused to recognize Speros' claim to the filling station property. On August 22, 1956, this action for specific performance of the oral promise made by Gust to convey or devise the described property to Speros was commenced by Speros against the estate of Gust Margares.

The testimony of numerous witnesses was submitted by plaintiff in support of his contentions. They had either overheard the conversations between Gust and Speros or otherwise had been informed by Gust as to the terms of his agreement with Speros. Other testimony related to Speros' acts in performance of his part of the agreement. Based on this and other evidence, the trial court found that:

"The terms of said oral agreement * * * were * * * proved * * * by clear, positive, and convincing evidence. Plaintiff has * * * performed all of the obligations * * * on his part * * *. The services performed by plaintiff * * * were all unequivocally referable to said agreement * * * and are not capable of valuation in money * * *. Therefore, plaintiff has no adequate * * * remedy at law

* * * and would be irreparably injured if specific performance were not granted * * *. Such enforcement will not cause unreasonable or disproportionate hardship to Mrs. Margares."

"* * * Mrs. Margares presented for probate to the Probate Court of Ramsey County, the Last Will and Testament of Margares, dated May 1, 1953, by the terms of which Margares made provision for her in lieu of the rights in his estate secured by statute by devising and bequeathing all of his estate, real, personal or mixed, to her as his sole beneficiary. * * * She has not filed any instrument renouncing or refusing to accept the provisions of said Will and has instead elected to take under said Will."

■ Examination of the testimony of the various witnesses called upon to testify in this action clearly reveals adequate support for the finding that an oral contract to convey or devise the filling station property had been entered into between Gust Margares and Speros Tjanetopoulos; and that the subsequent actions taken by Speros, which included terminating his employment in Greece and moving with his entire family to St. Paul and thereafter learning the English language while in possession of the filling station, were unequivocally referable to such oral agreement. A detailed recitation of the voluminous evidence on these questions would serve no useful purpose. We are governed by the rule that the credibility of witnesses and like questions are for the finders of fact. Accepting at its face value the testimony submitted for plaintiff, the conclusion is inescapable that the findings based thereon must be affirmed.

■ The applicable principles have been often expressed by this court. They are set forth in Ehmke v. Hill, 236 Minn. 60, 68, 51 N. W. (2d) 811, 817, as follows:

"* * * an oral contract for the transfer of an interest in land, whether by conveyance or by will, may be removed from the purview of the statute of frauds [M. S. A. 513.04] on either the unequivocal reference theory or on the fraud theory of part performance."

In Alsdorf v. Svoboda, 239 Minn. 1, 9, 57 N. W. (2d) 824, 830, we said:

"* * * No inequities exist as a basis for refusing specific perform-

ance. The consideration for the contract was adequate and its terms fair. Its enforcement will not cause unreasonable or disproportionate hardship or loss to anyone, including the defendants. On the contrary, its enforcement will result in substantial justice being done."

See, also, Burke v. Fine, 236 Minn. 52, 51 N. W. (2d) 818; Goette v. Howe, 232 Minn. 168, 44 N. W. (2d) 734; Shaughnessy v. Eidsmo, 222 Minn. 141, 23 N. W. (2d) 362, 166 A. L. R. 435.

■ There remains for determination the question whether Arlys Margares, as widow of Gust Margares, is entitled to her statutory share of the property involved. She did not renounce the will of her husband within the 6 months' period provided in M. S. A. 525.212, or at any other time. Section 525.212 provides:

*"If a will make provision for a surviving spouse in lieu of the rights in the estate secured by statute, such spouse shall be deemed to have elected to take under the will, unless he shall have filed an instrument in writing renouncing and refusing to accept the provisions of such will within six months after the filing of the certificate of probate.* For good cause shown, the court may permit an election within such further time as the court may determine. No devise or bequest to a surviving spouse shall be considered as adding to the rights in the estate secured by sections 525.145 [homestead rights] and 525.16 [below] to such spouse, unless it clearly appears *from the contents of the will* that such was the testator's intent." (Italics supplied.)

M. S. A. 525.16 provides that the widow's statutory interest extends to "all real property of which the decedent at any time while married to such spouse was seized or possessed, *to the disposition whereof by will or otherwise such survivor shall not have consented in writing or by election to take under the will as provided by law,* * * *." (Italics supplied.)

■ In construing statutory provisions relative to the right of a widow to elect to take under the statutes, this court stated in Fairchild v. Marshall, 42 Minn. 14, 16, 43 N. W. 563:

"* * * The reason * * * it was held to be contrary to the intention of the testator that the widow should have both the testamentary and the statutory * * * provisions in her favor was that the assertion

of the latter by her would be hostile to and tend to defeat the general purpose of the will. This reason applies with as much force to rights to which the law entitles her in real estate which the husband had conveyed during coverture, with covenants and which the general estate left by him was bound by, as it does to such rights in estates of which he died seised."

See, also, Howe Lbr. Co. v. Parker, 105 Minn. 310, 117 N. W. 518; Boeing v. Owsley, 122 Minn. 190, 142 N. W. 129.

Defendants contend that under In re Estate of Carey, 194 Minn. 127, 260 N. W. 320, a widow is not required to elect between rights secured by will and those secured by statute. In that case, however, the will was governed by the provisions of Mason St. 1927, § 8720, which has been repealed by the provisions of M. S. A. c. 525. In the present case testator's will is governed by § 525.212, which makes provision for the surviving spouse, and which directs that such spouse shall be deemed to have elected to take under the will unless it shall have been renounced in writing duly filed within 6 months after the filing of the certificate of probate.

It is clear that the principles of Fairchild v. Marshall, *supra,* are applicable here where the testator obligated himself during coverture to convey or devise the filling station property to plaintiff, and where his widow has failed to renounce his will within the time authorized by § 525.212. This being equivalent to election to take under the will, it must follow that she is now barred from claiming any statutory right in the property sought and claimed by plaintiff.

The order appealed from is affirmed.