**Donald MIELITZ and Marilynn Mielitz, Plaintiffs,**

v.

**Myrtle MIELITZ et al., Defendants.**

**No. CIV 74–1011.**

United States District Court,
D. South Dakota, N. D.

Jan. 27, 1975.

Chester A. Groseclose, Jr., Richardson, Groseclose, Kornmann & Wyly, Aberdeen, S. D., and Germain B. Kunz, Pflueger & Kunz, P.A., Ortonville, Minnesota, appeared in behalf of plaintiffs.

Joseph H. Barnett and Harvey C. Jewett, Siegel, Barnett, Schutz, O'Keefe & Ogborn, Aberdeen, S. D., and Clifford Benson, Benson & Schreiner, Ortonville, Minn., appeared in behalf of defendants.

## MEMORANDUM DECISION

NICHOL, Chief Judge.

This diversity action arises from a family disagreement involving a sale of land. Plaintiffs allege the existence of oral agreements for the sale of the land in dispute. Defendants deny the existence of an agreement and, in addition, raise the statute of frauds as a defense. Defendants also counterclaim.

Plaintiffs seek specific performance and damages, or, in the alternative, solely damages. Defendants' counterclaim prays 1) that the court order plaintiffs to relinquish possession of the land in dispute and 2) that the court order plaintiffs to pay the amount due for rent of the land in dispute for the 1974 crop year.

The case was tried to the court on January 8 and 9, 1975. This opinion constitutes the court's findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure. The nature of the action makes an analysis of the law an appropriate starting point.

## LEGAL ANALYSIS

The complaint alleges oral agreements for the sale of land, agreements governed by Minnesota law.[1] Because there is no writing evidencing these alleged agreements, they would be unenforceable unless they could be removed from the statute of frauds. Minnesota common law provides that such a removal is permissible on either the "fraud" theory or the unequivocal reference theory of partial performance. Tjanetopoulos v. Margares, 256 Minn. 176, 98 N.W.2d 97, 99 (1959). The Minnesota Supreme Court has explained these theories as follows:

> Thus, where plaintiff shows that his acts of part performance in reliance upon the contract have so altered his position that he will incur unjust and irreparable injury in the event that defendant is permitted to rely on the statute of frauds, equity requires that the contract be specifically enforced. (citation omitted) Or where the relationship of the parties, as shown by their acts rather than by the alleged contract, cannot reasonably be explained except by reference to some

---

[1]. The land in dispute is situated in Minnesota. The court, therefore, must apply Minnesota law to the alleged agreement. See 16 Am.Jur.2d, Conflict of Laws Sec. 16. Three Minnesota statutes appear to be applicable. Minn.Stat.Ann. Sec. 513.04 states as follows:

"No estate or interest in lands, other than leases for a term not exceeding one year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the parties creating, granting, assigning, surrendering, or declaring the same, or by their lawful agent thereunto authorized by writing. This section shall not affect in any manner the power of a testator in the disposition of his real estate by will; nor prevent any trust from arising or being extinguished by implication or operation of law."

Minn.Stat.Ann. Sec. 513.05 also states as follows:

"Every contract for the leasing for a longer period than one year or for the sale of any lands, or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party by whom the lease or sale is to be made, or by his lawful agent thereunto authorized in writing; and no such contract, when made by an agent, shall be entitled to record unless the authority of such agent be also recorded."

Minn.Stat.Ann. Sec. 513.06 states as follows:

"Nothing in this chapter contained shall abridge the power of courts of equity to compel the specific performance of agreements in cases of part performance thereof."

contract between them, the oral contract is taken out of the statute and may be specifically enforced. Burke v. Fine, 51 N.W.2d 818, 820 (Minn.1952).

■■ A plaintiff attempting to use either of the above theories to remove an oral agreement from the statute of frauds on the evidentiary basis of permanent improvements that he has made to the property must first show that the improvements were valuable. Holste v. Baker, 223 Minn. 321, 26 N.W.2d 473, 477 (1947). In determining whether the improvements are valuable, the court may consider the value of the improvements and work done as compared to the value of the property involved in the action. *Id.* Therefore, plaintiffs' case for specific performance depends on showing 1) the existence of an oral agreement and 2) either the "fraud" theory or the unequivocal reference theory of partial performance.

■ If the court finds that there was an oral agreement but that it cannot be removed from the statute of frauds, the question of awarding damages must then be resolved. Such an action for damages could be maintained and it would sound in quasi-contract. *Holste, supra,* 26 N.W.2d at 477. Because a quasi-contractual action is based on the idea that the defendant should not be unjustly enriched, the measure of damages is the enhanced value of the property due to the improvements made by the plaintiffs. Roske v. Ilykanyics, 232 Minn. 383, 45 N.W.2d 769, 773 (1951).

## THE EVIDENCE

The land in dispute is located in Minnesota near the South Dakota border. It was rented and lived on by plaintiffs, Donald and Marilynn Mielitz, husband and wife, from 1966 to the present. The land was owned jointly by John,[2] Myrtle, and Irma Mielitz, defendants, who live in South Dakota. Defendants are siblings. Plaintiff Donald Mielitz is a nephew of defendants. The lease of the land was oral and included a promise by the defendants that plaintiffs would have the first opportunity to buy the land at a price set by defendants, should defendants decide to sell.

The buildings on the land, particularly the house, were in poor repair when plaintiffs initially rented the land. Repairs were made by agreement of the parties. Defendants furnished the necessary materials and skilled labor and contributed some labor of their own. Plaintiffs contributed a great deal of labor toward making the buildings and farm yard inhabitable and useful, toward improving the driveway to the buildings, and toward increasing the productivity of the crop land. The parties agreed that plaintiffs would maintain the buildings in a condition comparable to that attained by the initial remodeling and repair.

The relevant evidence regarding the alleged agreements for the sale of the land follows. In the autumn of 1973, defendants decided to sell the land. Plaintiff Marilynn Mielitz testified that defendants offered on October 2, 1973, to sell the land to plaintiffs for $250 per acre, and that she immediately accepted the offer on behalf of herself and her husband. Defendants deny that such an agreement was made. They deny further that any conversation between them and plaintiffs occurred on that day.

Defendants Irma and Myrtle Mielitz testified that defendants offered on November 8, 1973, to sell the land to plaintiffs for $275 per acre, and that plaintiff Donald Mielitz said he would pay only $250 per acre, and that defendant John Mielitz urged him to "think it over" and to discuss the terms of the proposed sale with defendant's attorney. Plaintiff Donald Mielitz agrees that he conversed with defendants on approximately November 8, 1973, but contends that he believed an agreement had been reached on October 2, and that defendant John Mielitz told him on October 8 not to be concerned about the delay in completing the sale.

---

2. John Mielitz is now deceased. Myrtle Mielitz has been appointed special administratrix of his estate and represents his estate in this action.

Donald Mielitz also testified that he received a letter from defendants' attorney on approximately November 9, 1973, asking plaintiffs to contact him regarding the terms of the proposed sale of the land. Plaintiffs testified that they attempted to contact defendants' attorney by telephone on November 11 but were unsuccessful. Defendants' attorney testified that he could have been contacted either at his home or his office on that day, and that he received no calls from plaintiffs.

Neither defendants nor defendants' attorney had further contact with plaintiffs until December 28, 1973, when plaintiffs asked defendants about rumors they had heard about the sale of the land and, say the plaintiffs, accepted defendants' offer to sell the land for $275 per acre. In the meantime, near the end of November, 1973, defendants contacted their attorney and arranged for an agreement to sell the land to one Francis Karels with possession to transfer on October 1, 1974.

## APPLICATION OF THE LAW TO THE FACTS

A. The Action Based on the Alleged Oral Agreement. It is undisputed that defendants kept their oral promise to give plaintiffs the first chance to buy the land. The dispute, therefore, centers on the alleged agreements for the sale.

Assuming that there was an oral agreement for the sale of the land in dispute [3], the question becomes whether plaintiffs carried their burden of showing either theory of partial performance referred to above. It is undisputed that defendants accepted no payment from plaintiffs for the land, and that there was no transfer of possession. Any showing of partial performance, therefore, must be based on improvements made by plaintiffs. When a showing of

3. The evidence to the contrary is substantial. First, with respect to the alleged agreement of October 2, 1973, defendant Irma Mielitz's diary showed nothing regarding such an offer on that date. She recalled specifically what had occurred on that day, and her recollection did not include a visit with plaintiff Marilynn Mielitz. Defendants' witness, Cliff Benson, defendants' attorney, testified that he had visited with defendants while looking at the land on October 2, 1973, and that defendants made no mention of such an agreement. Defendants' witness, attorney Harold Nelson, testified that plaintiff Donald Mielitz came to his office on January 2, 1974, and said the farm had been "sold out from under him." Nelson also testified, however, that plaintiff made no mention of a definite agreement of October 2. According to Irma Mielitz's diary, the first discussion of a selling price occurred on November 8, 1973.

Secondly, with respect to the alleged agreement of December 28, 1973, plaintiffs contend that defendants' earlier offer was accepted on that day. The issue here appears to be whether plaintiffs' offer had been withdrawn prior to that day. It is undisputed that defendants' offer to sell for $250 per acre contained no limitation on the time of the continuance of the offer. In the absence of such a limitation, the offer remains open until its withdrawal is communicated to the offeree, or until the circumstances permit a presumption that the offer is no longer viable. It is undisputed that defendants never expressly told plaintiffs that their offer was being withdrawn. There is authority, however, for the proposition that "(i)t is sufficient to constitute a withdrawal that knowledge of acts by the offerer inconsistent with the continuance of the offer is brought home to the offeree, as where the offerer sells the property to a third person." 55 Am.Jur., Vendor and Purchaser Sec. 20 at p. 488. If the court were to apply this proposition to the evidence in this case, defendants' offer would be considered withdrawn because plaintiffs have conceded that they called on defendants on December 28, 1973, because they had heard of the sale to Francis Karels.

It is also possible that the court could find that the circumstances permitted a presumption that the offer was no longer viable on December 28, 1973. It is undisputed that defendants waited for at least two weeks after their offer to plaintiffs before deciding to go ahead with a sale to Francis Karels. Whether this was a reasonable time to wait before making their offer to Karels is a fact question that this court finds it unnecessary to decide. It is possible, however, that it could be resolved unfavorably to plaintiffs. The fact that plaintiffs did not contact defendants' attorney during this time period also weighs against the plaintiffs.

If the court were pressed to make a finding of fact on the issue of whether plaintiffs and defendants ever entered into an oral agreement for the sale of land, it would find in the negative.

partial performance is premised on improvements made by the purchaser, the burden is not carried unless there is a finding that the improvements are valuable. Assuming that plaintiffs in the case at bar have shown improvements that, were they valuable, would remove the agreement from the statute of frauds [4], the court finds that the improvements are not sufficiently valuable to occasion such a removal. The agreement, therefore, would remain under the statute of frauds and would be unenforceable.

■ The Minnesota Supreme Court has stated that "(i)n determining the sufficiency of improvements made by a purchaser, they must be viewed in the light of the value of the land, the purchaser's means and station in life, and the circumstances surrounding the case." *Holste, supra,* 26 N.W.2d at 477. Defendants concede and it has been established by testimony that the value of the land in question is approximately $72,000. Although plaintiffs contend that they have made many valuable improvements to the property, their efforts at placing a dollar value on their expenditures were less than successful. Giving plaintiffs the benefit of all doubts regarding their expenditures, they proved expenditures on improvements of no more than approximately $1250. Secondly, with respect to the purchaser's "means and station in life", plaintiffs are, apparently, successful farmers. They testified that they have sufficient savings to pay cash for the land in dispute, at any reasonable selling price. The court is unaware of any other circumstances that, if considered, would weigh in favor of the plaintiffs.

■ The amount of plaintiffs' expenditures is very small compared to the value of the land in dispute, and the expenditures certainly imposed no financial hardship or strain on plaintiffs. The court concludes that the improvements made by plaintiffs are insufficient to remove the agreement from the statute of frauds. If there were such an agreement, it would, therefore, be unenforceable.

B. The Quasi-Contract Action. As stated above, plaintiffs may have an action based on quasi-contract, and the measure of damages is the enhanced value of the premises due to the improvements made by plaintiffs. Plaintiffs have introduced no proof from which the amount of any enhanced value could be determined. Any claim based on quasi-contract, therefore, fails.

## DEFENDANTS' COUNTERCLAIMS

It is undisputed that no lease has been entered into between plaintiffs and defendants for the 1975 crop year, and that the land in dispute has been sold to Francis Karels. Plaintiffs, thus, are ordered to relinquish possession of the land in dispute no later than 30 days from the filing of this opinion.

It is also undisputed that plaintiffs have not paid the rent for their lease of the land for the 1974 crop year, and that the rent due is $15 per acre for 168 acres, a total of $2520. It is ordered, therefore, that plaintiffs pay $2520 to defendants no later than 30 days from the filing of this opinion. Defendants will prepare and submit the appropriate order.

---

4. The evidence to the contrary is substantial, particularly on the unequivocal reference theory. Nearly all the expenditures for improvements occurred prior to any of the alleged agreements. The court also is of the opinion that the expenditures and labor contributed by plaintiffs are possibly more readily explainable as being typical of the work product of any conscientious tenant than as being unequivocally referable to the alleged oral agreement. The court also believes that plaintiffs possibly have failed to prove the "fraud" theory of partial performance. Any inducements that defendants may have given to plaintiffs to improve the property were premised on the assumption that plaintiffs would meet their selling price.

If the court were pressed·to make a finding on this issue, it would find that plaintiffs have not shown partial performance under either the "fraud" or unequivocal reference theory.