**In re GUARDIANSHIP OF Francis Sadie HUESMAN, Ward.**

**No. CO–83–1938.**

Court of Appeals of Minnesota.

Sept. 18, 1984.

Zenas Baer, Wefald & Baer, Hawley, for appellant.

Paul O. Skatvold, Moorhead, for respondent.

Heard, considered and decided by POPOVICH, C.J., and LESLIE and CRIPPEN, JJ.

## OPINION

LESLIE, Judge.

This is an appeal from an order of the probate court determining that certain real property owned by the ward, Francis Huesman, should be conveyed to her sons, and that the remainder should be sold to provide funds for her care. We reverse and remand for a new trial.

## FACTS

Francis Huesman was adjudicated incompetent in May 1980, and is presently residing in a nursing home. It is expected that she will require nursing home care for the rest of her life. Until 1983 the costs of her care were paid with funds from a savings account which she held jointly with her two sons, the appellants Robert and Gary Huesman. Those funds have been exhausted.

Because she is the record owner of a farm presently operated by Robert and Gary, Francis Huesman does not qualify for public assistance. Her guardian (the respondent herein) in August 1983 therefore petitioned the probate court for sale of the farm in order to pay for her care. Her sons, Robert and Gary, contested the petition, alleging that their mother had orally agreed to convey the farm to them if they moved to the farm and worked there. Because they had allegedly acted in reliance upon that promise by giving up other employment, moving to the farm and living and working there, the sons requested the probate court to order specific performance of the oral promise to convey.

At the hearing held on the petition to sell, the sons testified as follows:

Francis Huesman and her husband Ferdinand purchased the 190 acre family farm in 1947. They had three sons—Robert, Gary and Arlin—and two daughters, one of whom is deceased. In 1956 Ferdinand suffered disabling rheumatoid arthritis and could no longer operate the farm by himself. He therefore asked Robert to return to the farm to help operate it, telling his three sons that if Robert returned he would one day own the farm. Robert left a full-time job with a hay company to return to the farm.

Ferdinand died in 1970, and Francis asked Gary to return to the farm also, because she wanted more family around her. At that time Gary was working as an accountant, making $5,200 per year, and his mother promised to pay him the same salary if he would return to the farm. Although Gary did return to the farm, his later tax returns reveal that he did not receive the promised income. Instead Francis promised that if he helped out on the farm, eventually it would belong to Robert and him together.

During the time that the brothers lived on the farm, they added a milk house, a pole barn, two wells, a garage, granaries and the foundation for a silo. They also put gravel on the driveway. They paid no rent to their mother, but shared in the profits of the farm. The brothers claimed at trial that they moved to the farm and made these improvements in reliance upon their mother's promise to convey the farm.

Following the hearing, the trial court issued its findings of fact, conclusions of law and order for judgment, denying the brothers' claim to the entire farm, but awarding them the farmhouse and ten acres of land "as a satisfaction in full of any claim, either legal or equitable which either one or both might have against their mother for any alleged improvements to the home site." The denial of appellants' claim to the entire farm was based upon the following findings of fact:

However, the operation of the farm by these two boys under the alleged oral lease with their mother has been a marginal operation, at best, and the entire farm, including the buildings are in a run-down condition, and there is no livestock being maintained on the premises.

\* \* \* \* \* \*

The improvements made by the two boys to the premises has not increased the market value of the premises nor is there any written instrument in existence which constitutes a memorandum of any kind which would evidence any type of an agreement between these boys and either one or both of the parents.

\* \* \* \* \* \*

That because either one or both of these boys have made these premises their home over many years, and because of the occupancy of the premises under the alleged oral lease with the mother, there is no part performance of any type of an agreement which would exempt their transaction or remove their transaction from the provisions of the Statute of Frauds.

The trial court did not enter findings of fact stating whether or not an oral agreement had been reached between the brothers and their parents. The brothers have appealed, claiming that the undisputed evidence demonstrates an oral agreement by Francis to convey the land, and part performance sufficient to remove the agreement from the statute of frauds.

### ISSUES

1. Did the appellants demonstrate sufficient part performance to remove the alleged oral contract from the statute of frauds?

2. Did the probate court have jurisdiction to determine the sons' claim for specific performance of an alleged oral contract to convey the farm?

### ANALYSIS

An agreement to convey land must ordinarily be in writing to meet the

statute of frauds. Minn.Stat. § 513.04 (1982). As its name implies, the purpose of the statute of frauds is to "defend against frauds and perjuries by denying force to oral contracts of certain types which are peculiarly adaptable to those purposes." *Alamoe Realty Co. v. Mutual Trust Life Ins. Co.*, 202 Minn. 457, 459, 278 N.W. 902, 903 (1938). However, because the statute of frauds can work hardship and injustice, the doctrine of part performance has been developed to alleviate potentially inequitable results. Part performance is also a basis for preventing fraud:

> The underlying principle is that where one of the contracting parties has been induced or allowed to alter his situation on the faith of an oral agreement within the statute, to such an extent that it would be a fraud on part of the other party to set up its invalidity, equity will make the case an exception to the statute. After a party has been induced to make expenditures, or a change of situation, in regard to the subject-matter of the agreement, or upon the supposition that it was to be carried into execution, and the assumption of rights thereby to be acquired, so that the refusal to complete the execution of the agreement is not merely a denial of rights which it was intended to confer, but the infliction of an unjust and unconscientious injury and loss, in such case, the party is held, by force of his acts, or silent acquiescence, which have misled the other to his harm, to be estopped from setting up the statute.

*Brown v. Hoag*, 35 Minn. 373, 377–378, 29 N.W. 135, 138 (1886).

■ There are two theories under which a party's acts may constitute part performance sufficient to avoid operation of the statute of frauds: the "fraud" theory and the "unequivocal reference" theory. *Ehmke v. Hill*, 236 Minn. 60, 68–69, 51 N.W.2d 811, 817 (1952). These two theories are described in *Burke v. Fine*, 236 Minn. 52, 55–56, 51 N.W.2d 818, 820 (1952):

> "[W]here plaintiff shows that his acts of part performance in reliance upon the

contract have so altered his position that he will incur unjust and irreparable injury in the event that defendant is permitted to rely on the statute of frauds, equity requires that the contract be specifically enforced.

> \* \* \* \* \* \*

> Or where the relationship of the parties, as shown by their acts rather than by the alleged contract, cannot reasonably be explained except by reference to some contract between them, the oral contract is taken out of the statute of frauds and may be specifically enforced.

(Citations omitted.) A party who alleges either of these two theories to remove a contract from the statute of frauds due to permanent improvements which he has made to the property must demonstrate that the improvements were valuable. *Mielitz v. Mielitz*, 387 F.Supp. 1163, 1165 (D.S.D.1975), citing *Holste v. Baker*, 223 Minn. 321, 26 N.W.2d 473, 477 (1947).

■ The trial court found that the brothers had not demonstrated part performance of a contract to convey the land because they had made the farm their home, had occupied the premises under an oral lease with their mother, and had not increased the value of the land. Nonetheless, the court conveyed to the brothers the farmhouse and ten acres of land. The court did not specify any legal basis for that decision, nor can we find any existing theory of law which would support the trial court's action. The farm legally belongs to Francis Huesman, as the trial court specifically found. There was no agreement in writing to convey the farm to the brothers, either by means of an inter vivos or testamentary transfer, nor did the court find part performance which would remove any alleged agreement from the statute of frauds. Other potential bases for recovery such as quantum meruit or quasi-contract, which might have justified an award of damages, were neither pleaded nor proved by the brothers. We are therefore compelled to reverse the trial court's decision to convey a portion of the farm to the brothers.

We also find that several of the trial court's findings are either clearly erroneous or unsupported by the record. Specifically, the court found that the brothers' numerous improvements to the farm did not increase its value, although the record contains no factual support for that conclusion. On the face of it, the addition of a pole barn, two wells, a garage, granaries and the foundation for a silo appears significant. In addition, the court found that there was no livestock on the farm, although uncontroverted testimony introduced at the hearing indicated that the brothers had 30 head of cattle on the land. The court also found that the operation of the farm was "marginal \* \* \* at best" and that the buildings were in a run-down condition. It is difficult to fathom how the court arrived at this conclusion, since there was no testimony to that effect, since there was no viewing of the property by the court, and since there were no photographs of the farm introduced at trial. Because these findings are closely connected with the trial court's conclusion that the brothers did not demonstrate part performance of the alleged oral agreement to convey the land, we reverse the trial court's order, and remand for the taking of further testimony.

Finally, it is questionable whether the probate-county court had jurisdiction to determine the brothers' action for specific performance of the alleged contract to convey a farm worth approximately $200,-000.00, since the probate court is a court of limited jurisdiction. *See* Minn. Const. art. VI § 11; Minn.Stat. § 487.01 (1982) (designating the probate court as a county court); Minn.Stat. § 487.14; 487.15; and 487.19 (1982) (limiting the jurisdiction of county courts); and Minn.Stat. § 525.011 (1982) (civil and criminal jurisdiction of probate courts). *See also Hauser v. Mealey*, 263 N.W.2d 803, 807 (Minn.1978) (county courts are courts of limited jurisdiction); *Leslie v. Minneapolis Society of Fine Arts*, 259 N.W.2d 898, 903 (Minn.1977) (probate court has jurisdiction to exercise powers which are necessary to carry out expressly-conferred powers); *In re Robert's Estate*, 202

Minn. 217, 221, 277 N.W. 549, 551 (1938) (the probate court has no jurisdiction over an action for specific performance of a contract). However, since this action was originally heard, the courts of the Seventh Judicial District have chosen to merge; thus upon remand the court may properly assume jurisdiction of this matter.

## DECISION

The probate court erred by determining that there was no part performance by the ward's sons of an alleged oral agreement to convey real property to them, yet awarding a portion of the property to the sons.

Reversed and remanded.